FRANK A. CONSIDINE, Plaintiff-Appellant v. COMPASS GROUP USA, INC., Defendant-Appellee

No. COA00-843

(Filed 7 August 2001)

**Employer and Employee— wrongful discharge—employee-at-will—violation of public policy—specific conduct and specific policy not alleged**

The trial court did not err by dismissing a wrongful discharge complaint pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6), where plaintiff alleged that he had been employed as in-house counsel by a corporation providing food service to government and private corporations, that he had discovered and sought to end violations of a compliance program that affected federal, state and local government contracts, and that he was discharged for doing what his job required as a monitor of the compliance program. Exceptions to the employment-at-will-doctrine have been recognized in North Carolina, including a prohibition against termination for a purpose in contravention of public policy, but the plaintiff here failed to allege specific conduct violating a public policy specifically expressed in North Carolina's statutes or constitution.

Chief Judge EAGLES dissenting.

Appeal by plaintiff from order entered 3 April 2000 by Judge Timothy S. Kincaid in Superior Court, Mecklenburg County. Heard in the Court of Appeals 21 May 2001.

*Ferguson, Stein, Wallas, Adkins, Gresham, & Sumter, P.A., by John W. Gresham, for plaintiff-appellant.*

*Smith Helms Mulliss & Morre, L.L.P., by H. Landis Wade, Jr. and Paul M. Navarro, for defendant-appellee.*

McGEE, Judge.

Frank A. Considine (plaintiff) appeals the dismissal by the trial court, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), of his complaint alleging wrongful discharge from employment by his former employer, Compass Group USA, Inc. (defendant) in violation of North Carolina public policy. Plaintiff also alleged he was a third-party beneficiary of a settlement agreement between defendant and the United

States government but plaintiff filed a voluntary dismissal without prejudice of this claim.

Relevant allegations in plaintiff's complaint filed 6 December 1999 include:

1. The Plaintiff, Frank A. Considine, is a citizen of North Carolina and a resident of Mecklenburg County. Until November 15, 1996, Plaintiff was employed as in-house counsel by Compass Group, USA, Inc.

2. Defendant, Compass Group, USA, Inc. (hereinafter "Compass Group" or "Compass") is a Delaware corporation having it's principle [sic] place of business in Charlotte, North Carolina. Compass Group provides products and services under food service contracts for federal, state, local government, and private corporations throughout the United States.

3. Compass, as of the time of the events complained of herein, owned and controlled various food service contracts, including those of Canteen Corporation, Flagstar Corporation, and Service America Corporation.

4. Plaintiff was employed by Defendant in June of 1996, as an in-house corporate counsel. His original assignment was to implement the acquisition of certain assets of Service America Corporation by Compass.

5. Plaintiff was also assigned duties regarding a compliance program mandated by a settlement agreement between Canteen and the federal government.

6. Between January 1988 and January 1994, Canteen provided commissary and restaurant services to the United States in Canteen's mid-Atlantic region. Canteen provided these services pursuant to various contracts with the United States.

7. Canteen was required under the terms of a settlement agreement entered into in December of 1995, with the United States, to pay the sum of $900,000.00 for its failure to pass through rebates under the service contracts and to implement a compliance program to ensure that Canteen properly rebated monies to the United States under ongoing contracts.

8. Under the terms of the settlement agreement, Defendant was specifically prohibited from retaliating against an employee for reporting the failure to properly credit rebates.

9. In carrying out his duties regarding the compliance program, Plaintiff discovered unlawful conduct on the part of the Defendant which affected both federal, state and local government service contracts.

10. Plaintiff then advised his supervisor, the general counsel for the Defendant, regarding the conduct he had discovered. Plaintiff also sought advice from outside counsel regarding ways for the Defendant to remedy its conduct.

11. Less than two weeks later, on November 15, 1996, Plaintiff was discharged without warning on the grounds that "things just weren't working out."

12. Plaintiff was then asked to leave the building without returning to his office. When he did return to his office to obtain his personal effects, he found the general counsel rifling through his desk in search of documents which would show the unlawful conduct of the Defendant.

13. Plaintiff was then asked to sign an agreement that would provide him three months' severance pay if he waived his right to bring any legal action against the Defendant and signed a confidentiality agreement with the Defendant. Plaintiff refused to do so.

14. Plaintiff was terminated because he had learned of the unlawful conduct, reported it to his supervisors and sought to end the unlawful practices.

15. The Defendant's actions as set out herein violate the public policies of North Carolina and are thus unlawful.

16. Because of the unlawful conduct set out herein, Plaintiff has been damaged in an amount in excess of $10,000.00.

Defendant filed a motion to dismiss plaintiff's complaint for wrongful discharge pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted. Following a hearing on defendant's motion, the trial court granted the motion to dismiss plaintiff's claim for wrongful discharge in an order filed on 3 April 2000. Plaintiff appeals.

The essential question in reviewing the grant of a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1 (1999) Rule 12(b)(6) is whether, "as a matter of law, the allegations of the complaint, treated

as true, are sufficient to state a claim upon which relief can be granted under some legal theory." *Lynn v. Overlook Development,* 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991) (citation omitted). A motion to dismiss pursuant to Rule 12(b)(6) should not be granted " '*unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*' " *Sutton v. Duke,* 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (citation omitted) (emphasis in original). Therefore, we review the allegations in plaintiff's complaint to determine whether the trial court erred in dismissing plaintiff's claim for wrongful discharge under Rule 12(b)(6).

The discharge of an employee at will generally does not support an action for wrongful discharge in this state. However, as argued by plaintiff, exceptions to this general rule have been recognized by our appellate courts, including a prohibition against termination for a purpose in contravention of public policy. Plaintiff cites the leading cases that have recognized this exception, being *Sides v. Duke University,* 74 N.C. App. 331, 328 S.E.2d 818, *disc. review denied,* 314 N.C. 331, 333 S.E.2d 490 (1985), *overruled on other grounds,* 347 N.C. 329, 493 S.E.2d 420 (1997); *Coman v. Thomas Manufacturing Co.,* 325 N.C. 172, 381 S.E.2d 445 (1989); and *Amos v. Oakdale Knitting Co.,* 331 N.C. 348, 416 S.E.2d 166 (1992). In each of these cases, our Courts have recognized an exception to the employment at will doctrine by identifying a cause of action for wrongful discharge in violation of public policy. Under the exception, the employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy.

The plaintiff in *Sides* alleged in her complaint "that her wrongful discharge [was] in retaliation for truthfully testifying in court [and] was a wanton and reckless violation of public policy and her rights[.]" *Sides,* 74 N.C. App. at 335, 328 S.E.2d at 822. She alleged in her complaint a series of specific actions by the defendant-employer that culminated in the plaintiff's discharge in retaliation for her refusal to testify falsely in a medical malpractice case. These alleged actions by the defendant included threats, a hostile attitude and isolation of the plaintiff in her work environment. Our Court began the analysis of the plaintiff's claim for wrongful discharge by stating "that the legislature is not at all adverse to courts of this State entertaining actions based on a violation of policies that have been enacted or otherwise established for the protection and benefit of the public." *Id.* at 337, 328 S.E.2d at 823. Our Court in *Sides* cited criminal statutes and a

public policy that defendant's alleged conduct violated in holding defendant had no right to terminate plaintiff for an unlawful reason or purpose that contravenes public policy. We further noted that

> [p]erjury and the subornation of perjury were both felonies at common law and are so punishable by G.S. 14-209 and G.S. 14-210. The intimidation of witnesses was an offense at common law and is punishable by G.S. 14-226 as a misdemeanor. These offenses are also an affront to the integrity of our judicial system, an impediment to the constitutional mandate of the courts to administer justice fairly[.]

*Id.* at 337-38, 328 S.E.2d at 823-24.

The plaintiff in *Coman* alleged in his complaint that the defendant-employer discharged him for his refusal to violate United States Department of Transportation regulations by operating his vehicle excessive hours and his refusal to falsify records. The complaint also alleged that the plaintiff was informed by the defendant that he would have to continue to drive for periods of time that violated federal regulations if he wanted to keep his job and that if the plaintiff refused, his pay would be reduced by fifty percent. Our Supreme Court, in finding that the complaint stated a cause of action for wrongful discharge, noted that the alleged conduct by defendant not only violated federal regulations, but "also violated the public policy of North Carolina. N.C.G.S. 20-384 provides that the Division of Motor Vehicles may promulgate highway safety rules[.]" *Coman*, 325 N.C. at 176, 381 S.E.2d at 447. The Court cited a series of statutes enacted to carry out the public policy of our state to protect the safety of our highways that the defendant's alleged conduct violated.

The plaintiffs in *Amos* alleged in their complaint that the defendant-employer had discharged the plaintiffs for refusing to work for less than the statutory minimum wage in violation of North Carolina public policy as set forth in N.C. Gen. Stat. § 95-25.3. Our Supreme Court determined that the plaintiffs' complaint established a cause of action for wrongful discharge as the defendant's alleged conduct had violated the public policy when the defendant discharged the plaintiffs "in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos*, 331 N.C. at 353, 416 S.E.2d at 169. The Supreme Court cited Article 2A of Chapter 95 of the North Carolina General Statutes, the Wage and Hour Act, as setting forth the public policy of this state dealing in part with the wage levels of employees. The Court also held that the public policy exception to

the employment at will doctrine adopted in *Coman* is "a judicially created doctrine, designed to vindicate the rights of employees fired for reasons offensive to *the public policy of this State.*" *Id.* at 356, 416 S.E.2d at 171. (emphasis added).

Plaintiff also asserts that his complaint states a claim for wrongful discharge pursuant to our Court's decision in *Johnson v. Mayo Yarns Inc.*, 126 N.C. App. 292, 484 S.E.2d 840, *disc. review denied,* 346 N.C. 547, 488 S.E.2d 802 (1997). Plaintiff contends that our Court's *dicta* in *Mayo* that "a definition of 'public policy' has evolved which connotes the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good," *Id.* at 296, 484 at 842-43, establishes that an employee in North Carolina can assert a claim for wrongful discharge without demonstrating an express public policy declaration within the North Carolina Constitution or General Statutes. However, plaintiff cites no decision by our appellate courts that supports this assertion.

Defendant responds that plaintiff's reliance on *Mayo* is misplaced as our Court clearly examined the North Carolina Constitution in that case to determine if there was a public policy that the defendant's alleged conduct may have violated and concluded that the plaintiff's conduct carried out in private employment was not constitutionally protected activity. *Id.* at 297, 484 S.E.2d at 843.

Therefore, our Court must determine whether the allegations in plaintiff's complaint sufficiently allege conduct by defendant that violates the public policy of North Carolina when defendant allegedly discharged plaintiff for plaintiff's discovery of defendant's unspecified unlawful conduct that affected federal, state and local government service contracts in a federally mandated rebate compliance program. Plaintiff contends that he has stated in his complaint a valid claim for wrongful discharge in violation of North Carolina public policy by asserting that "[u]nlawful conduct in billing state and local government agencies is clearly injurious to the public and against the public good." We first note, however, that plaintiff's complaint does not allege unlawful conduct in billing state and local government agencies by defendant. Plaintiff's complaint alleges unspecified conduct by defendant that allegedly violates "a compliance program to ensure that [defendant] rebated monies to the United States under ongoing contracts." Plaintiff's complaint does not assert that defendant's unspecified conduct violated any public policy that has been established by our state's statutes or constitution.

"The narrow exceptions to [the employment at will doctrine] have been grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law." *Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 333-34, 493 S.E.2d 420, 423 (1997). In *Deerman v. Beverly California Corp.*, 135 N.C. App. 1, 6, 518 S.E.2d 804, 807 (1999), *disc. review denied*, 351 N.C. 353, 542 S.E.2d 208 (2000), our Court carefully reviewed and analyzed the plaintiff's complaint pursuant to "the public policy of North Carolina as set forth in the Nursing Practice Act (NPA), N.C.G.S. §§ 90-171.19 [through] 90-171.47 (1993), and the administrative regulations promulgated thereunder." Unlike plaintiff's complaint in the case before us that alleges no specific statutory or constitutional violation, the plaintiff in *Deerman* "alleged that in advising the patient's family concerning choice of physicians, [plaintiff] had complied with the North Carolina General Statutes and the North Carolina Administrative Code regulating the practice of nursing." *Id.* at 3, 518 S.E.2d at 805. The plaintiff in *Deerman* alleged that her employment duties were mandated under the public policy of our state pursuant to the General Statutes. Her complaint therefore alleged specific conduct by the defendant that violated "strong public policy favoring administering of nursing services to those acutely or chronically ill and the supervising by nurses of patients during convalescence and rehabilitation." *Id.*

Similarly, in *Lenzer v. Flaherty*, 106 N.C. App. 496, 418 S.E.2d 276, *disc. review denied*, 332 N.C. 345, 421 S.E.2d 348 (1992) the plaintiff alleged wrongful discharge in violation of N.C. Gen. Stat. § 122C-66, which makes it a crime to knowingly injure mentally disabled patients in state facilities. The plaintiff alleged that the defendants' conduct violated the statute and she was fired for reporting defendants' alleged abuse. In *Vereen v. Holden*, 121 N.C. App. 779, 468 S.E.2d 471 (1996), *disc. review denied*, 347 N.C. 410, 494 S.E.2d 600 (1997), the plaintiff alleged that he was discharged by the defendants due to his political affiliation and activities. Our Court found that this allegation, if true, violated our state constitution and state statutes and therefore the defendants' conduct violated public policy. In *Caudill v. Dellinger*, 129 N.C. App. 649, 501 S.E.2d 99 (1998), *disc. review denied*, 349 N.C. 353, 517 S.E.2d 888 (1999), the plaintiff's complaint alleged that the defendant's conduct violated N.C. Gen. Stat. § 126-84 and Article 1, Section 19 of the North Carolina Constitution. In *Simmons v. Chemol Corp.*, 137 N.C. App. 319, 528 S.E.2d 368 (2000), the plaintiff's complaint alleged that the de-

fendant's conduct violated public policy pursuant to N.C. Gen. Stat. § 143-422.2. The plaintiff alleged that he was handicapped and that the defendant discharged him because of his handicap in violation of the statute.

Plaintiff in the case before us has failed to identify any specified North Carolina public policy that was violated by defendant in discharging plaintiff. The complaint does not allege that defendant's conduct violated any explicit statutory or constitutional provision, nor does it allege defendant encouraged plaintiff to violate any law that might result in potential harm to the public. *See Teleflex Info. Sys., Inc. v. Arnold*, 132 N.C. App. 689, 513 S.E.2d 85 (1999). The complaint does not allege any of "[t]he narrow exceptions to [the employment at will doctrine] grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law." *Kurtzman*, 347 N.C. at 333-34, 493 S.E.2d at 423.

Plaintiff argues that it is a violation of public policy for an employer to discharge an employee after the employee has "learned of the [employer's] unlawful conduct, reports [the employer's conduct] to his supervisors and [seeks] to end the unlawful practices." Plaintiff alleged that defendant's unspecified conduct was in violation of a compliance program that affected federal, state and local government service contracts. Plaintiff's complaint alleged that he was discharged for doing what his job required as a monitor of defendant's compliance program. However, unlike the previously noted case law, plaintiff's complaint fails to allege what defendant's alleged conduct was and how that conduct is in violation of North Carolina public policy.

Any exception to the at will employment doctrine "should be adopted only with substantial justification grounded in compelling considerations of public policy." *Id.* at 334, 493 S.E.2d at 423. Plaintiff failed to allege in his complaint a compelling consideration of public policy as expressed in our state's statutes or constitution that was violated by defendant, or to allege any specific conduct by defendant that violated this same expression of our state's public policy. "In order to support a claim for wrongful discharge of an at-will employee, the termination itself must be motivated by an unlawful reason or purpose that is against public policy." *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). In light of the case law that cites specific conduct by a defendant that violated a specific expression of North Carolina public pol-

icy, we hold that plaintiff's complaint does not state a claim for wrongful discharge. The trial court did not err in dismissing plaintiff's complaint pursuant to Rule 12(b)(6).

Having affirmed the trial court's dismissal of plaintiff's wrongful discharge claim for failure to allege a cause of action, we do not address plaintiff's additional argument that his status as defendant's former in-house counsel does not preclude his wrongful discharge claim grounded in public policy.

Affirmed.

Judge SMITH concurs.

Chief Judge EAGLES dissents.

EAGLES, Chief Judge, dissenting.

I respectfully dissent. I disagree with the majority's conclusion that plaintiff failed to state a cause of action for wrongful discharge. First, I believe the public policy exception to the employment at will doctrine is more broad than the majority has stated.

The discharge of an at will employee generally will not support an action for wrongful termination of employment in North Carolina. However, our courts have developed a public policy exception to this general rule. Public policy has been defined as "the principle of law that holds no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Johnson v. Mayo Yarns Inc.*, 126 N.C. App. 292, 296, 484 S.E.2d 840, 842-43, *disc. rev. denied*, 346 N.C. 547, 488 S.E.2d 802 (1997).

In *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992), our Supreme Court discussed the limits of the public policy exception, stating that although

the definition of "public policy" approved by this Court does not include a laundry list of what is or is not "injurious to the public or against the public good," *at the very least* public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes.

(Emphasis added). Contrary to the majority's opinion, my reading of the case law indicates that the courts of this State have declined to

create a "bright line" test for determining when the termination of an at will employee violates public policy. *Teleflex Information Systems v. Arnold,* 132 N.C. App. 689, 691, 513 S.E.2d 85, 87 (1999). I do not believe we should decree such a "bright line" test in this case, but we should continue to analyze wrongful termination cases on a case by case basis. Therefore, I disagree with the majority's holding that an at will employee may *only* bring a wrongful discharge claim based on a violation of an express public policy declaration contained in our General Statutes or Constitution.

The majority opinion, by affirming the trial court's dismissal of plaintiff's complaint for failure to state a claim under Rule 12(b)(6), has effectively precluded in-house counsel from bringing his claim for wrongful termination in violation of North Carolina public policy. Whether in-house counsel may pursue a claim for wrongful termination under any circumstances is an issue which has yet to be decided in North Carolina. This case presents the opportunity to address this issue of first impression.

"A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation." N.C. Rules of Prof. Conduct, Rule 1.6, Comment. I believe that had plaintiff stated his cause of action for wrongful termination in greater particularity in his complaint, he would have risked breaching client confidences in violation of Rule 1.6.

In a formal ethics opinion approved 18 January 2001, the North Carolina State Bar addressed the following issue: "May Attorney A reveal information and documents of Corporation C to establish a claim for wrongful termination in his own lawsuit against Corporation C?" In answering this question, the State Bar concluded that

[g]iven the competing public policies . . ., a lawyer may reveal no client confidences in a complaint for wrongful termination *except as necessary to put the opposing party on notice of the claim.* Prior to disclosing any other confidential information of the former employer and client, the lawyer must obtain a ruling from a court of competent jurisdiction authorizing the lawyer to reveal confidential information of the former client, and even then may only reveal such confidential information as is necessary to establish the wrongful termination claim. Requesting in camera review of the confidential information the plaintiff intends to proffer to establish the wrongful termination claim would be an

appropriate procedure for obtaining the court's ruling. There may be other similarly appropriate procedures.

2000 N.C. Eth. Op. 11 (2001) (emphasis added).

I would follow the standard laid out in Ethics Opinion 11, as well as the standard established by a number of other jurisdictions who have addressed this issue and reverse the trial court's order. *See generally, General Dynamics Corp. v. Superior Court*, 876 P.2d 487 (Cal. 1994); *GTE Products Corp. v. Stewart*, 653 N.E.2d 161 (Mass. 1995); *Nordling v. Northern State Power Co.*, 478 N.W.2d 498 (Minn. 1991). Plaintiff should be provided the opportunity to establish the proof necessary to pursue his wrongful discharge claim while plaintiff continues to abide by Ethics rules protecting client confidences.

To decide as the majority has ruled will deny in-house attorney-employees the ability to allege with particularity their wrongful termination of employment claims and will frustrate the possible cessation of employers' conduct which is or may be "injurious to the public or against the public good." While every client, corporate or otherwise, should be able to confer freely and openly with their attorney, clients should not be able to use the shield of attorney-client confidentiality to defend a possibly meritorious wrongful discharge suit by former in-house attorney-employee.