**Jeffrey GOTTESMAN Plaintiff,**

v.

**J.H. BATTEN, INC. Defendant.**

**No. 1:03CV00085.**

United States District Court, M.D. North Carolina.

Sept. 26, 2003.

*Lockridge v. Bd. of Trs.,* 315 F.3d 1005, 1011 (8th Cir.2003).

606

Mark Floyd Reynolds, II, High Point, NC, Todd J. Combs, Morgan Herring Morgan Green, Rosenblutt & Gill, High Point, NC, for Plaintiff.

Dena Beth Langley, Brian Stephen Clarke, Adams Kleemeier Hagan Hannah & Fouts, Greensboro, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

On January 24, 2003, Jeffrey Gottesman ("Plaintiff") filed an employment discrimination suit against J.H. Batten, Inc. ("Defendant"). Plaintiff's complaint alleges several bases for relief in five separate counts: (1) age discrimination in employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA"); (2) failure to accommodate a disability and discriminatory discharge in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"); (3) failure to accommodate a disability and discriminatory discharge in violation of the North Carolina Persons with Disabilities Protection Act,[1] N.C. Gen. Stat. § 168A–1, et seq. (the "NCPDPA"); (4) failure to accommodate a disability in violation of the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2; and (5) wrongful discharge from employment in violation of North Carolina state public policy.

Before the court is Defendant's motion to dismiss all counts of Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, Defendant's motion to dismiss will be granted in part and denied in part.

## FACTS

Defendant is a building contractor located in Forsyth County, North Carolina. On November 6, 2000, Plaintiff was hired by Defendant's President, David Batten, as Defendant's "Chief Estimator." At the time of his hiring, Plaintiff was fifty-nine years old and had over forty years of experience as an estimator in the construction industry.

As Chief Estimator, Plaintiff performed approximately seventy-five percent of his work within Defendant's home office. Plaintiff's duties included determining the building materials needed by Defendant to complete building projects, pricing and bidding, and sales and marketing. Part of Plaintiff's sales and marketing duties involved oral and written presentations to potential clients, architects, and owners. At Defendant's request, Plaintiff also trained a new estimator to perform similar types of estimation work for Defendant.

In December 2001, Plaintiff was diagnosed with throat cancer and hospitalized. Defendant placed Plaintiff on an indefinite medical leave of absence and hired a new estimator in the meantime. On December 13, 2001, medical doctors performed a full laryngectomy on Plaintiff and surgically removed all of Plaintiff's larynx.[2] As a

---

1. Plaintiff's complaint refers to N.C. Gen.Stat. § 168A–1 et seq. as the "North Carolina Handicapped Persons Protection Act . . . effective October 1, 1985." (Compl.¶ 39.) However, N.C. Gen. Stat § 168A–1 et seq. was amended effective October 1, 1999, and renamed the "North Carolina Persons with Disabilities Protection Act." See 1999 N.C. Sess. Laws 160, s. 1.

2. The larynx is "the musculocartilaginous structure, lined with mucous membrane, connected to the superior part of the trachea and to the pharynx inferior to the tongue and the hyoid bone [and] the essential sphincter guarding the entrance into the trachea and functioning secondarily as the organ of voice." Dorland's Illustrated Medical Dictionary 715 (26th ed.1985).

result of his laryngectomy, Plaintiff lost the use of his vocal cords and now speaks with the aid of an electronic speaking device or artificial larynx.[3]

On April 11, 2002, Plaintiff returned to work. Plaintiff maintains that upon his return to work, he asked Defendant to provide him with e-mail capabilities and a telephone headset. Plaintiff requested these accommodations so that he might perform his job duties and speak on the telephone with ease despite his electronic speaking device. According to Plaintiff's complaint, Defendant agreed to provide Plaintiff with e-mail capabilities but refused to provide Plaintiff with a telephone headset. Defendant told Plaintiff and Plaintiff's wife that Plaintiff could use a telephone headset on company phones as long as he purchased his own headset. Although Plaintiff explained to Defendant that he could not afford to buy his own telephone headset, Defendant ignored all of Plaintiff's requests for a headset.

Plaintiff also maintains that, during his first week at work following his medical leave of absence, he did not receive any work assignments until he requested work from Defendant. Upon Plaintiff's request, Defendant asked Plaintiff to estimate the cost of construction for a church building. Plaintiff received no other work projects from Defendant until one week later when Plaintiff again requested work from Defendant. Defendant then asked Plaintiff to estimate another church construction project.

On April 26, 2002, David and Harold Batten met with Plaintiff and informed Plaintiff of his discharge from employment with Defendant. Plaintiff maintains that Defendant told him the reason for his discharge was that his work was "too slow." (Compl.¶ 19.) At the time of Plaintiff's discharge, Plaintiff was sixty-one years old.

Plaintiff alleges in his complaint that Defendant failed to provide Plaintiff reasonable accommodations regarding his disability by refusing to supply him with a telephone headset. Plaintiff also asserts that Defendant's alleged reason for terminating him was pretextual and that Defendant wrongfully terminated Plaintiff's employment because of his age and disability. Based on these allegations, Plaintiff contends that Defendant's conduct constitutes employment discrimination in violation of the ADEA, ADA, NCPDPA, and the United States Constitution. Plaintiff also contends that Defendant wrongfully discharged him in violation of North Carolina public policy.

## DISCUSSION

A motion to dismiss for failure to state a claim upon which relief may be granted made pursuant to Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

---

**3.** An artificial larynx is "an electromechanical device which, when activated, produces sounds used in speech, by simulating laryn- geal activity, and thus enables a laryngectomized person to converse." *Id.*

entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989) (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

### (1) Plaintiff's ADEA Claim

■■■ In his "First Cause of Action," Plaintiff asserts a claim against Defendant pursuant to the ADEA. "In order to establish a cause of action under the ADEA, a plaintiff must demonstrate that but for the employer's motive to discriminate against the plaintiff on the basis of age, the plaintiff would not have been discharged." *E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 940 (4th Cir.1992). "The plaintiff may meet this burden under the ordinary standards of proof by direct or indirect evidence relevant to and sufficiently probative of the issue [of age discrimination]." *Id.*[4] In the alternative, a plaintiff may follow the judicially created scheme of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and adapted to ADEA cases. *Clay Printing Co.,* 955 F.2d at 940 (citations omitted). Under the *McDonnell Douglas* scheme of proof, the plaintiff must show four elements to establish a prima facie case of discriminatory discharge under the ADEA: "(1) he is a member of the protected class; (2) he was qualified for the job and met the employer's legitimate expectations; (3) he

was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by someone with comparable qualifications outside the protected class." *Causey v. Balog,* 162 F.3d 795, 802 (4th Cir.1998) (citation omitted).

■■■ An employment discrimination plaintiff need not plead specific facts in his complaint establishing a *prima facie* case of discrimination under the *McDonnell Douglas* framework. *Swierkiewicz v. Sorema,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). "[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Swierkiewicz,* 534 U.S. at 511, 122 S.Ct. 992 (emphasis omitted). Instead, the plaintiff must comply with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must only include a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to provide defendant fair notice of the nature of the plaintiff's claims and the grounds upon which they rest. *Id.* at 512, 122 S.Ct. 992 (citing *Conley,* 355 U.S. at 47, 78 S.Ct. 99).

■■■ In the instant case, Plaintiff alleges in his complaint that "[t]he Defendant's assertions that it was proper to terminate [Plaintiff] for unknown reasons is a ploy used by the Defendant to terminate the Plaintiff['s] employment because of his age, sixty-one." (Compl.¶ 25.) Plaintiff contends that he was "intentionally termi-

---

4. Under the ordinary standards of proof scheme, a *prima facie* case of employment discrimination consists of three elements. The plaintiff must demonstrate that: (1) he was an employee covered by the ADEA, (2) who suffered an unfavorable action by an employer covered by the ADEA, and (3) "age was a determining factor" in the action in the

sense that " 'but for' " the defendant's intent to discriminate on the basis of age, the plaintiff would not have been subjected to the employment action. *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1112 (4th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981) (citing *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir.1979)).

nated by the Defendant because of his age." (Compl.¶ 27.) Plaintiff also contends that "[he] was terminated by [Defendant] fifteen days following his return to work, and he was replaced by a significantly younger employee." (Compl.¶ 36.) Plaintiff further contends that he is entitled to liquidated damages for Defendant's "willful violations of the Age Discrimination in Employment Act." (Compl.¶ 29.) Viewing the complaint in the light most favorable to the plaintiff, the court finds that Plaintiff has sufficiently stated a claim of age discrimination under the ADEA.

▆ In support of its motion to dismiss, Defendant relies heavily on the Fourth Circuit's holding in *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991) (holding that where the individual who fired the plaintiff is the same individual who hired him less than six months earlier with full knowledge of his age, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer). Defendant suggests that this court extend the *Proud* inference to the very earliest stages of litigation and dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted.

The presumption articulated in *Proud* simply does not apply in the context of Defendant's motion to dismiss Plaintiff's complaint for failure to state a claim. The Federal Rules of Civil Procedure establish a pleading standard without regard to whether a claim will succeed on the merits.

*Swierkiewicz,* 534 U.S. at 515, 122 S.Ct. 992. Not every fact that a plaintiff will eventually base his claim upon must be listed in his complaint. *See Faircloth v. Duke Univ.,* 267 F.Supp.2d 470, 473 (M.D.N.C.2003). An inquiry into whether or not Plaintiff is able to support his claim with evidence of discriminatory motive is more suitable for summary judgment. Therefore, Defendant's motion to dismiss Plaintiff's claim based on the ADEA is denied.

(2) Plaintiff's ADA Claims

▆ In his "Second Cause of Action," Plaintiff asserts claims against Defendant pursuant to the ADA. "The ADA prohibits discrimination by a covered entity, including a private employer ... 'against a qualified individual with a disability.'" *Pollard v. High's of Baltimore,* 281 F.3d 462, 467 (4th Cir.2002); *see also* 42 U.S.C. §§ 12111(2), 12112(a). "To establish a cause of action under the ADA, a plaintiff must show: '(1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability.'" *Petty v. Freightliner Corp.,* 123 F.Supp.2d 979, 981 (W.D.N.C.2000) (quoting *Doe v. University of Maryland Med. Sys. Corp.,* 50 F.3d 1261, 1265 (4th Cir.1995)). "[I]n order to come within the ADA's protected class, a plaintiff must first show that [he or] she is disabled within the meaning of the Act." *Pollard,* 281 F.3d at 467.[5]

---

**5.** In the context of the ADA, "disability" means "a physical or mental impairment that substantially limits one or more of the major life activities of a [qualified individual]; [ ] a record of such impairment; or [ ] being regarded as having such an impairment." 42 U.S.C. § 12101(2). Under the Equal Employment Opportunity Commission regulations, " a 'physical impairment' includes '[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting

one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 479–80, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (citing 29 C.F.R. § 1630.2(h)(1)). The term "substantially limited" means " '[u]nable to perform a major life activity that the average person in the

■ Plaintiff's claim under the ADA for failure to accommodate a disability ultimately requires a showing that Plaintiff was "disabled" within the meaning of the ADA. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 (4th Cir.2001) (citations omitted).[6] However, a plaintiff may establish a discriminatory discharge claim by showing that he was either actually impaired or regarded as disabled by his employer, even if not actually impaired. Whether Plaintiff is actually a disabled person need not be determined at this stage in litigation. *See Fletcher v. Tidewater Builders Ass'n, Inc.*, No. CIV.A. 2:03CV46, 216 F.R.D. 584, 2003 WL 21782331 at *4 (E.D.Va. May 12, 2003). A plaintiff need not state a *prima facie* case under the ADA to plead sufficient facts to sustain a claim under the ADA and Rule 8(a)(2). *See Swierkiewicz*, 534 U.S. at 515, 122 S.Ct. 992. Under Rule 8(a)(2), a plaintiff's complaint needs to contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 8(a)(2); *see also Swierkiewicz*, 534 U.S. at 508, 122 S.Ct. 992.

■ The requirements of notice pleading are not onerous. *Id.* at 513–14, 122 S.Ct. 992. In the instant case, Plaintiff states in his complaint that "[he] returned to work on April 11, 2002, with physical limitations involving the loss of his larynx ... [that] required use of an electronic speaking device." (Compl.¶ 32.) Plaintiff alleges that "[t]he Defendant purposely denied employment opportunity to the Plaintiff, who is otherwise a qualified individual with a disability, by denying the Plaintiff reasonable accommodations to the physical impairments confronting the Plaintiff." (Compl. ¶ 32.) Plaintiff also alleges that "[s]ince the Plaintiff's throat surgery, the Defendant purposely discriminated against the Plaintiff by terminating him, and by refusing to accommodate the Plaintiff's disability needs." (Compl.¶ 33.) Plaintiff contends that Defendant's "improper actions, including the termination of [Plaintiff's] employment ... violates [sic] the Americans with Disabilities Act." (Compl.¶ 31.) These allegations contained in Plaintiff's complaint lead the court to find that Plaintiff has pled sufficient facts to sustain a claim under the ADA and Rule 8(a)(2).

general population can perform'; or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to ... [how] the average person in the general population can perform that same major life activity.'" *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195–96, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (citing 29 C.F.R. § 1630.2(j)). "Major life activities, for purposes of ADA claims, include 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, [and] learning[.]'" *Petty v. Freightliner Corp.*, 123 F.Supp.2d 979, 981–82 (citing 29 C.F.R. § 1630.2(I)).

**6.** In his wrongful discharge claim under the ADA, Plaintiff must eventually establish his *prima facie* case by demonstrating that "(1) he is within the ADA's protected class; (2) he

was discharged; (3) at the time of his discharge he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001) (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir.2001)). In his failure to accommodate claim under the ADA, Plaintiff must eventually establish his *prima facie* case by demonstrating that (1) he was an individual who had a disability under the meaning of the statute; (2) his employer had notice of his disability; (3) with reasonable accommodation he could perform the essential functions of the position; and (4) his employer refused to make such accommodations. *Id.* (citing *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir.1999)).

In his "Third Cause of Action" under the NCPDPA, Plaintiff states that "[he] had a physical impairment that does not substantially limit major life activities, but is considered by this Defendant as constituting such a limitation." (Compl.¶ 43.) Defendant cites this single allegation by Plaintiff to argue that Plaintiff's claims under the ADA must be dismissed because the ADA imposes no obligation on Defendant to accommodate a non-existent disability. However, "[t]he ADA provides protection for individuals, who while they are not [actually] disabled under the definition provided by the ADA, are regarded as disabled by their employer." *Farrish v. Carolina Commercial Heat Treating, Inc.,* 225 F.Supp.2d 632, 636 (M.D.N.C.2002) (citing *Haulbrook v. Michelin N. Am.,* 252 F.3d 696, 702–03 (4th Cir.2002)). "A person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Serv., Inc.,* 527 U.S. 516, 521–22, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999).

To state a claim that Defendant regarded him as disabled, Plaintiff must allege that Defendant entertained a misperception about him or that Defendant regarded him as having an impairment within the meaning of the ADA. *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). Plaintiff's statement that his impairment "does not substantially limit major life activities, but is considered by ... Defendant as constituting such a limitation" (Compl.¶ 43) infers that Defendant regarded him as impaired within the meaning of the ADA and discharged him for that reason. Furthermore, Plaintiff makes numerous other allegations throughout his complaint that he is physically impaired and restricted in the major life activity of speaking.

Viewing the complaint in the light most favorable to the plaintiff, Plaintiff has sufficiently stated claims for failure to accommodate an actual disability and discriminatory discharge under the ADA because of his disability or because Defendant regarded him as disabled. Therefore, Defendant's motion to dismiss Plaintiff's claims based on the ADA will be denied.

(3) Plaintiff's NCPDPA Claim

In his "Third Cause of Action," Plaintiff asserts claims against Defendant for failure to provide reasonable accommodation and for discriminatory discharge pursuant to the NCPDPA. Civil actions regarding employment discrimination under the NCPDPA must be "commenced within 180 days after the date on which the aggrieved person became aware of or, with reasonable diligence, should have become aware of the alleged discriminatory practice or prohibited conduct." N.C. Gen. Stat. § 168A–12. In this case, the last alleged discriminatory act described in Plaintiff's complaint occurred when Defendant terminated Plaintiff's employment on April 26, 2002. (Compl.¶ 19.) Plaintiff surely gained awareness of this alleged discriminatory conduct contemporaneously with its occurrence. However, Plaintiff filed his complaint in this action on January 24, 2003—two hundred seventy-three days after the date of Defendant's last alleged discriminatory act.

Dismissal is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *Brooks v. City of Winston–Salem, N.C.,* 85 F.3d 178, 181 (4th Cir.1996). A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading and dismissal is appropriate. 5A Charles A. Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 1357, at 352 (2d ed.1990).

Because Plaintiff's NCPDPA claim is time-barred by the one hundred eighty day statute of limitations set forth in N.C. Gen.Stat. § 168A–12, Plaintiff has failed to state a claim upon which relief can be granted. Therefore, Plaintiff's "Third Cause of Action" fails in its entirety as a matter of law. Defendant's motion to dismiss Plaintiff's claims based on the NCPDPA will be granted.[7]

**(4) Plaintiff's Supremacy Clause Claim**

 In his "Fourth Cause of Action," Plaintiff attempts to assert an employment discrimination claim against Defendant pursuant to the Supremacy Clause of the United States Constitution. "The Supremacy Clause is grounded in the allocation of power between federal and state governments and is not a source of, nor does it protect, [individual rights] ...." *Maryland Pest Control Ass'n v. Montgomery County, Md.,* 884 F.2d 160, 162 (4th Cir.1989). "[T]he Supremacy Clause establishes the supremacy of federal over state law and is not of itself a source of substantive constitutional rights." *Id.* Considering Plaintiff's complaint against the standards applicable to a Rule 12(b)(6) motion, Plaintiff has failed to state a claim upon which relief can be granted. Therefore, Plaintiff's "Fourth Cause of Action" fails in its entirety as a matter of law, and Defendant's motion to dismiss Plaintiff's claim based on the Supremacy Clause of the United States Constitution will be granted.

**(5) Plaintiff's North Carolina State Public Policy Claim**

 In his "Fifth Cause of Action," Plaintiff asserts a claim against Defendant for wrongful discharge in violation of "the intent of the laws of the State of North Carolina." (Compl.¶ 55.) As a general rule in North Carolina, an employee at-will has no claim for wrongful discharge. *Walker v. Westinghouse Elec. Corp.,* 77 N.C.App. 253, 260, 335 S.E.2d 79, 84 (1985), *disc. review denied,* 315 N.C. 597, 341 S.E.2d 39 (1986). "[I]n the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Kurtzman v. Applied Analytical Indus., Inc.,* 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997). "However, [the employment at-will] doctrine is not without limits and a valid claim for relief exists for wrongful discharge of an employee at will if the contract is terminated for an unlawful reason or a purpose that contravenes public policy." *Tompkins v. Allen,* 107 N.C.App. 620, 622, 421 S.E.2d 176, 178 (1992), *disc. review denied,* 333 N.C. 348, 426 S.E.2d 713 (1993) (citation omitted). The public policy exception to at-will employment has been narrowly construed and is "grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law." *Kurtzman,* 347 N.C. at 333–34, 493

---

7. The NCPDPA also provides, in pertinent part:

No court shall have jurisdiction over an action filed under this chapter where the plaintiff has commenced federal judicial or administrative proceedings under ... the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.,* as amended, or federal regulations promulgated under that

act, involving or arising out of the facts and circumstances involved in the alleged discriminatory practice under this Chapter. N.C. Gen.Stat. § 168A–11(c). Plaintiff's claims under the ADA and NCPDPA arise out of the same facts and circumstances. Plaintiff's NCPDPA claim fails as a matter of law for this reason as well.

S.E.2d at 423. Under these exceptions, the employee has the burden of pleading and proving that the employee's dismissal occurred for a reason that violates public policy. *Considine v. Compass Group U.S.A., Inc.,* 145 N.C.App. 314, 317, 551 S.E.2d 179, 181 (2001).

In the instant case, Plaintiff identifies "[t]he right to work [as] one of the most significant concerns in this State, as well as this Nation." (Compl.¶ 52.) Plaintiff contends that "[t]he improper actions by this Defendant in summarily discharging the Plaintiff, impact[ ] on, and violate[ ] this public policy." (Compl.¶ 52.)

Plaintiff's complaint fails to cite any specific North Carolina public policy expressed in an explicit statutory or constitutional provision as a basis for his wrongful discharge claim. *Cf. Considine v. Compass Group U.S.A., Inc.,* 145 N.C.App. 314, 551 S.E.2d 179 (2001) (holding that plaintiff failed to state a claim for wrongful discharge where plaintiff's complaint alleged merely that "[d]efendant's actions as set out herein violate the public policies of North Carolina and are thus unlawful," and did not identify any specified North Carolina public policy that defendant violated by discharging plaintiff). As a result, Plaintiff has not provided Defendant with fair notice of the statutory or constitutional grounds upon which his wrongful discharge claim rests.

Plaintiff has failed to state a claim upon which relief can be granted, and Plaintiff's "Fifth Cause of Action" fails in its entirety as a matter of law. Therefore, Defendant's motion to dismiss Plaintiff's wrongful discharge claim based on the public policy of the State of North Carolina will be granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's motion [Doc. # 5] to dismiss is **GRANTED IN PART AND DENIED IN PART.**

IT IS ORDERED that Defendant's motion to dismiss Plaintiff's claim based on the ADEA is **DENIED.**

IT IS FURTHER ORDERED that Defendant's motion to dismiss Plaintiff's claims based on the ADA are **DENIED.**

IT IS FURTHER ORDERED that Defendant's motion to dismiss Plaintiff's claims based on the NCPDPA are GRANTED, and those claims are hereby **DISMISSED.**

IT IS FURTHER ORDERED that Defendant's motion to dismiss Plaintiff's claim based on the Supremacy Clause of the United States Constitution is **GRANTED,** and that claim is **DISMISSED.**

IT IS FURTHER ORDERED that Defendant's motion to dismiss Plaintiff's wrongful discharge claim based on the public policy of the State of North Carolina is **GRANTED,** and that claim is **DISMISSED.**