INMAN, Judge.
James Pope ("plaintiff") appeals the order granting the City of Albemarle's ("defendant's") motion for summary judgment. On appeal, plaintiff contends that the trial court erred in granting the motion because there were genuine issues of material fact as to whether he was wrongfully discharged for reporting criminal behavior to law enforcement in violation of public policy. Defendant argues that plaintiff failed to plead that he was dismissed for a reason that violates an expressed public policy and that, even if he had, the undisputed evidence shows that plaintiff was terminated for grounds unrelated to his reports of criminal behavior by a fellow police officer.
After careful review, we affirm the trial court's order.
Factual and Procedural Background
In February 2000, plaintiff began working for the Albemarle Police Department. At all times relevant to the events alleged in his complaint, plaintiff worked as a detective in the criminal investigation unit focusing on narcotics investigations.
Due to a work injury, plaintiff left work in November 2011 and was scheduled to return 1 May 2012. On 23 March 2012, Stanly County Sheriff's Detective Doug Straining ("Detective Straining") called plaintiff and told him that plaintiff's partner Detective Roger Ridenhour, Jr. ("Detective Ridenhour") had informed Detective Straining that plaintiff would be removed from his narcotics position once he returned from leave. Plaintiff contacted Detective Ridenhour, who denied making the statement. Plaintiff then called his supervisor, Sergeant Kelly Williams, who confirmed that he would be removed from his narcotics position.
Plaintiff became "suspicious of Detective Ridenhour's honesty" regarding previous incidents that the two had been involved in while on the job. Plaintiff contacted Detective Straining and told him about several incidents of Detective Ridenhour's misconduct. Specifically, plaintiff reported that Detective Ridenhour had taken silver coins from a house during the execution of a search warrant, stolen a personal computer during an investigation, and taken $40 in cash from the home of a suspect during the execution of a search warrant. More details about these accusations are discussed below. Plaintiff never reported this information because, as he stated in his complaint, "[he] had no reason to be suspicious of Detective Ridenhour's conduct."
Detective Straining told plaintiff that he would have to report this information. Plaintiff asked him to wait until plaintiff had spoken with an attorney. A few days later, Detective Straining informed Sheriff Rick Burris ("Sheriff Burris") about plaintiff's accusations. As a result of this conversation, the State Bureau of Investigation interviewed plaintiff, and Sheriff Burris and Detective Straining met with William Halliburton, Albemarle City's Chief of Police ("Chief Halliburton"), to inform him of plaintiff's accusations. Chief Halliburton initiated an internal investigation into departmental policy violations committed by both Detective Ridenhour and plaintiff.[1]
On 3 April 2012, Chief Halliburton and Assistant Chief R.D. Bowen met with plaintiff at his house and at his attorney's office to discuss plaintiff's accusations against Detective Ridenhour. Plaintiff claimed that during a "knock and talk" in September 2006, Detective Ridenhour had taken a computer from the suspect's house that the suspect had told them was stolen. Detective Ridenhour and plaintiff never wrote a report on the knock-and-talk, and the seized computer was never entered into evidence. Plaintiff claimed that he had seen the stolen computer at Detective Ridenhour's house during a cook-out.
Plaintiff also claimed that, during the execution of a search warrant in July 2006, he had seen Detective Ridenhour take $40 out of the suspect's dresser drawer and put it in his pocket. Later, Detective Ridenhour paid for plaintiff's dinner with the money.
Finally, during the execution of another search warrant, plaintiff stated that in May 2009, Detective Ridenhour had gone through a "large tub of coin[s]" and taken some old silver coins before it was collected as evidence. When asked why he thought Detective Ridenhour took the money, plaintiff replied that he "heard [Detective Ridenhour] mention something about it." In all of these cases, plaintiff contended that he did not report Detective Ridenhour's conduct because "he had no reason to be suspicious" of him.
On 13 April 2012, Chief Halliburton sent plaintiff a letter outlining all of various policy and ethical violations he had committed by "knowingly and purposefully with[holding] information for several years concerning another officer's criminal behavior while on duty." Chief Halliburton cited four separate administrative policies plaintiff had violated by failing to report Detective Ridenhour's misconduct, including: (1) failing to obey and observe all laws, (2) participating in conduct that breaches the public trust and respect of the department, (3) acting in a way that impairs the department's operation or brings it into disrepute, and (4) failing to properly handle property and properly maintain the integrity of evidence. Chief Halliburton indicated that he intended to recommend to the city manager that plaintiff be terminated. However, Chief Halliburton gave plaintiff the opportunity to meet and "present [his] position" on the matter before Chief Halliburton made his final recommendation to the city manager.
On 26 April, plaintiff met with Chief Halliburton. On 27 April, Chief Halliburton wrote the city manager and recommended termination, stating that "[he] heard nothing in this interview that changed any fact of the investigation about [plaintiff's] misconduct."
After receiving the recommendation from Chief Halliburton, the city manager reviewed the matter and upheld the recommendation to terminate plaintiff based solely on the misconduct set out in the 13 April letter. The city manager notified plaintiff of his decision on 30 April 2012.
On 2 June 2012, plaintiff filed a complaint asserting a claim for wrongful discharge. Specifically, plaintiff alleged that he was terminated for reporting Detective Ridenhour's misconduct in violation of the public policy prohibiting "employers from terminating an employee, or otherwise subjecting [an] employee to adverse employment actions, because of the employee's report of criminal activity to law enforcement." On 24 January 2014, defendant filed an amended motion for summary judgment. The matter came on for hearing on 3 February 2014 before Judge W. Erwin Spainhour. On 18 February, the trial court granted defendant's motion. Plaintiff timely appeals.
Defendant's Motion to Dismiss
Initially, we must address defendant's motion to dismiss. The gist of defendant's motion is that plaintiff's appeal should be dismissed because plaintiff: (1) failed to properly request the hearing transcript in violation of Rule 7(a) of the North Carolina Rules of Appellate Procedure; (2) failed to serve a transcript request on defendant in violation of Rule 7(a); (3) failed to serve a proposed record on appeal within 35 days after filing notice of appeal in violation of Rules 7(a), 11(a), and 11(b); (4) failed to properly paginate the record on appeal in violation of Rule 9(b)(4); (5) improperly added a certificate of service to the final record on appeal; (6) failed to include citations to the record on appeal in the "Statement of the Case" section of his brief; and (7) improperly set out block quotes.
"[A] party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal." Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.,362 N.C. 191, 198, 657 S.E.2d 361, 365 (2008). Even in totality, plaintiff's nonjurisdictional violations of our Rules of Appellate Procedure do not constitute "substantial" or "gross violations" because they do not hinder or impede our review of the merits. See id.at 200, 657 S.E.2d at 366-67 ("In determining whether a party's noncompliance with the appellate rules rises to the level of a substantial failure or gross violation, the court may consider, among other factors, whether and to what extent the noncompliance impairs the court's task of review and whether and to what extent review on the merits would frustrate the adversarial process."). Therefore, plaintiff's violations do not warrant dismissal, and we deny defendant's motion to dismiss and review the merits below.
Standard of Review
"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." In re Will of Jones,362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). "In ruling on the motion, the trial court must construe all evidence in the light most favorable to the non-moving party, allowing the non-moving party a trial upon the slightest doubt as to the facts." Canady v. McLeod,116 N.C.App. 82, 84, 446 S.E.2d 879, 880 (1994).
Analysis
On appeal, plaintiff argues that there was a genuine issue of material fact as to whether plaintiff was fired for reporting the suspected criminal conduct of Detective Ridenhour in violation of public policy. Thus, according to plaintiff, summary judgment was improper. We disagree.
"Ordinarily, an employee without a definite term of employment is an employee at will and may be discharged without reason." Coman v. Thomas Mfg. Co.,325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989). However, the rule governing the ability to discharge at-will employees is subject to certain exceptions, including:
while there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.
Id.at 175, 381 S.E.2d at 447.
An employee asserting a claim for wrongful discharge in violation of public policy has the burden to identify a specific North Carolina public policy or "explicit statutory or constitutional provision" that the employer is alleged to have violated. Considine v. Compass Grp. USA, Inc.,145 N.C.App. 314, 321, 551 S.E.2d 179, 184 (2001).
Even if we were to assume, without deciding, that plaintiff's complaint sufficiently alleged a specific North Carolina public policy that defendant violated, see id.,defendant met its burden of showing that there was no genuine issue of material fact as to whether plaintiff's termination was based on grounds unrelated to plaintiff's reports to law enforcement. Defendant sufficiently forecasted evidence that plaintiff was terminated not because he reported the illegal behavior but because he failed to do so within a reasonable time after he witnessed Detective Ridenhour's criminal behavior in violation of several department policies. In response to plaintiff's complaint, defendant offered undisputed evidence showing that even though plaintiff had witnessed Detective Ridenhour break the law in at least three instances, plaintiff had never reported this behavior nor reported Detective Ridenhour's attempts to cover up his crimes.
Although plaintiff's complaint alleges, and plaintiff argues in this appeal, that he was terminated in retaliation for reporting criminal activity, the evidence provided by plaintiff in support of his wrongful termination claim overwhelmingly shows his complicity in those crimes and purposeful withholding of information concerning those crimes for a period of six years. In sum, even construing the evidence in a light most favorable to plaintiff, plaintiff knowingly and purposefully withheld information about Detective Ridenhour's crimes for years and only reported these things once he believed he was at risk for losing his job. Thus, plaintiff's claims of wrongful discharge amount to nothing but unsupported speculation, and plaintiff has produced insufficient evidence to defeat defendant's motion for summary judgment. Accordingly, we affirm the trial court's order granting summary judgment in favor of defendant.
Conclusion
Based on the foregoing reasons, we affirm the trial court's order.
AFFIRMED.
Judges ELMORE and GEER concur.
Report per Rule 30(e).
Opinion
Appeal by plaintiff from order entered 18 February 2014 by Judge W. Erwin Spainhour in Stanly County Superior Court. Heard in the Court of Appeals 18 March 2015.

In a letter written to plaintiff on 13 April 2012, Chief Halliburton listed several department violations plaintiff had committed in the past that had resulted in disciplinary action including: (1) giving medication to someone to "keep her awake"; (2) providing alcohol to a person who had a problem with alcohol; (3) stopping by a female's house while on duty and getting into an altercation with her that required a police response; and (4) being disrespectful and challenging to the police officers who responded to the call. As a result of these prior violations, plaintiff had been demoted, his salary was reduced, and he was put on probation. Chief Halliburton discussed another incident that resulted in disciplinary action where plaintiff allegedly read an "insensitive" poem during a departmental meeting. However, although these incidents were relevant to the department's internal investigation, they do not serve as the basis for plaintiff's termination because the termination was based solely on the incidents with Detective Ridenhour.