JAMES EDWARD IMES, Plaintiff v. CITY OF ASHEVILLE, CCL MANAGEMENT, INC., and ASHEVILLE CITY COACH LINES, INC., Defendants

No. COA03-218

(Filed 20 April 2004)

**Employer and Employee— wrongful discharge—at-will employee—motion to dismiss—sufficiency of evidence**

The trial court did not err by granting defendants' motions to dismiss plaintiff at-will employee's claim for wrongful discharge even though plaintiff contends he was terminated in violation of public policy based on his status as a victim of domestic violence, because: (1) the complaint did not allege that defendants' conduct violated any explicit statutory or constitutional provision, nor did it allege defendants encouraged plaintiff to violate any law that might result in potential harm to the public; (2) the complaint did not allege any of the narrow exceptions to the employment-at-will doctrine grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law; and (3) although domestic violence is a serious social problem, the Court of Appeals cannot create public policy exemptions where none exist.

Judge TIMMONS-GOODSON dissenting.

Appeal by plaintiff from order entered 30 October 2002 by Judge Dennis J. Winner in Superior Court, Buncombe County. Heard in the Court of Appeals 28 October 2003.

*Sutton Edmonds & Sutton, by John R. Sutton, Jr. and April Burt Sutton, for plaintiff appellant.*

*City of Asheville, by Assistant City Attorney Curtis W. Euler, for defendant appellee City of Asheville.*

*Fred T. Hamlet for defendant appellees CCL Management, Inc. and Asheville City Coach Lines, Inc.*

WYNN, Judge.

By this appeal, Plaintiff James Edward Imes contends the trial court erred in granting motions to dismiss his compaint for wrongful discharge against Defendants City of Asheville, CCL Management,

Inc., and Asheville City Coach Lines, Inc. Plaintiff argues the termination of his employment with Defendants violated public policy of this State. We conclude Plaintiff's complaint failed to state a claim for wrongful discharge in violation of public policy, and we therefore affirm the order of the trial court.

The pertinent facts of the instant appeal are as follows: On 22 July 2002, Plaintiff filed a verified complaint in Buncombe County Superior Court alleging wrongful discharge in violation of public policy. The complaint alleged Plaintiff was an employee-at-will with Asheville City Coach Lines, Inc. from 1974 until his termination on 17 August 2001. Plaintiff alleged "Defendants CCL Management, Inc. and/or Asheville City Coach Lines, Inc. acted and served as agents to the City of Asheville." According to the complaint, Plaintiff was terminated after he was hospitalized for serious injuries he sustained when his wife shot him on or about 12 July 2001. Plaintiff alleged his supervisor informed him "he was being terminated due to the Plaintiff being a victim of domestic violence." As a victim of domestic violence, Plaintiff alleged he was a "member of a class of persons sought to be protected by the laws of the state of North Carolina" and therefore his termination violated public policy "in that, termination of any employment based on the employee's status as a victim of domestic violence tends to be injurious to the public and against the public good." On 30 October 2002, the trial court entered an order granting Defendants' motions to dismiss Plaintiff's complaint, from which Plaintiff appealed.

The issue on appeal is whether Plaintiff's complaint states a valid claim for wrongful discharge in violation of public policy. For the reasons stated herein, we conclude the complaint fails to state a claim upon which relief may be based, and we affirm the order of the trial court.

A motion to dismiss for failure to state a claim upon which relief may be granted challenges the legal sufficiency of a pleading. *Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 316-17, 551 S.E.2d 179, 181, *affirmed per curiam*, 354 N.C. 568, 557 S.E.2d 528 (2001). In ruling on a motion to dismiss under Rule 12(b)(6), a court must determine whether, taking all allegations in the complaint as true, relief may be granted under any recognized legal theory. *Taylor v. Taylor*, 143 N.C. App. 664, 668, 547 S.E.2d 161, 164 (2001). A complaint may be dismissed for failure to state a claim if no law supports the claim, if sufficient facts to make out a good claim

are absent, or if a fact is asserted that defeats the claim. *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 225, 517 S.E.2d 406, 413 (1999).

In the instant case, Plaintiff was employed at will. Although at-will employment may be terminated " 'for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.' " *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989) (quoting *Sides v. Duke University*, 74 N.C. App. 331, 342, 328 S.E.2d 818, 826, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985), *overruled in part on other grounds, Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 493 S.E.2d 420 (1997)). "The narrow exceptions to [the employment-at-will doctrine] have been grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law." *Kurtzman*, 347 N.C. at 333-34, 493 S.E.2d at 423.

To state a claim for wrongful discharge in violation of public policy, an employee has the burden of pleading that his "dismissal occurred for a reason that violates public policy." *Considine*, 145 N.C. App. at 317, 551 S.E.2d at 181; *see also Kurtzman*, 347 N.C. at 331, 493 S.E.2d at 422; *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 693, 575 S.E.2d 46, 51 (2003). "Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Coman*, 325 N.C. at 175 n.2, 381 S.E.2d at 447 n.2. Although this definition of public policy "does not include a laundry list of what is or is not 'injurious to the public or against the public good,' at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, 416 S.E.2d 166, 169 (1992) (footnote omitted).

Wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer's request, *see, e.g., Coman*, 325 N.C. at 175, 381 S.E.2d at 447 (holding the complaint stated a claim for wrongful discharge in violation of public policy where the employee was discharged for refusing to comply with his employer's demand

that he continue to operate a commercial vehicle for periods of time that violated federal regulations); *Sides*, 74 N.C. App. at 343, 328 S.E.2d at 826-27 (holding that the plaintiff's complaint stated an enforceable claim for wrongful discharge where the employee was wrongfully discharged in retaliation for refusing to testify falsely in a medical malpractice case), (2) for engaging in a legally protected activity, *see Vereen v. Holden*, 121 N.C. App. 779, 784, 468 S.E.2d 471, 474 (1996) (holding that the plaintiff alleged sufficient facts in his complaint to state a claim for wrongful discharge where he alleged he was discharged due to his political affiliation and activities), *disc. review denied*, 347 N.C. 410, 494 S.E.2d 600 (1997), or (3) based on activity by the employer contrary to law or public policy. *See Amos*, 331 N.C. at 350, 416 S.E.2d at 167 (holding that firing an employee for refusing to work for less than the statutory minimum wage violated North Carolina public policy); *Simmons v. Chemol Corp.*, 137 N.C. App. 319, 322, 528 S.E.2d 368, 370 (2000) (recognizing claim for wrongful discharge in violation of public policy where the employee alleged he was handicapped and that his employer discharged him because of his handicap in violation of N.C. Gen. Stat. § 143-422.2).

The complaint filed in the instant case does not allege that Defendants' conduct violated any explicit statutory or constitutional provision, nor does it allege Defendants encouraged Plaintiff to violate any law that might result in potential harm to the public. Instead, the complaint alleged that "domestic violence is a serious social problem in North Carolina" and that "termination of any employment based on the employee's status as a victim of domestic violence tends to be injurious to the public and against the public good." Plaintiff acknowledges that "there are no North Carolina cases which specifically carve out a public policy exception to the employment-at-will doctrine based on domestic violence." Nor does Plaintiff cite North Carolina statutory law in support of his position.

While Chapter 50B of our General Statutes contains various protections for victims of domestic violence, *see* N.C. Gen. Stat. § 50B-1 *et seq.*, it does not establish victims of domestic violence as a protected class of persons or extend employment security status to such persons. *Compare* N.C. Gen. Stat. § 143-422.2 (2003) (stating that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.").

We do not dispute Plaintiff's allegation, nor the dissent's position, that domestic violence is a serious social problem for our State and is recognized as such by our General Assembly and the Governor. It is, however, but one of many social problems addressed by our General Statutes. Poverty, child abuse, juvenile delinquency, substance abuse—all are examples of social ills our General Statutes seek to alleviate. *See, e.g.,* N.C. Gen. Stat. § 108A-24 *et seq.* (creating public assistance programs); N.C. Gen. Stat. § 14-313 *et seq.* (protection of minors); N.C. Gen. Stat. § 143B-540 (providing for comprehensive juvenile delinquency and substance abuse prevention plan). All such statutes may be read to express a general public policy in favor of protection of victims of poverty, child abuse, substance abuse, etc. We do not interpret such statutes, however, as creating specialized and protected classes of persons entitled to employment and other status protection. If the General Assembly desires to exempt victims of domestic violence from the at-will employment doctrine, it is free to do so. This Court, however, may not create public policy exemptions where none exist.

Plaintiff has failed to identify any specified North Carolina public policy that was violated by Defendants in terminating his employment. The complaint does not allege that Defendants' conduct violated any explicit statutory or constitutional provision, nor does it allege Defendants encouraged Plaintiff to violate any law that might result in potential harm to the public. *Considine,* 145 N.C. App. at 321-22, 551 S.E.2d at 184. The complaint does not allege any of "the narrow exceptions to [the employment-at-will doctrine] . . . grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law." *Kurtzman,* 347 N.C. at 333-34, 493 S.E.2d at 423. Any exception to the at-will employment doctrine "should be adopted only with substantial justification grounded in compelling considerations of public policy." *Id.* at 334, 493 S.E.2d at 423. Because Plaintiff's complaint failed to articulate such compelling grounds to justify an exception to Defendants' right to terminate his employment, we must hold the trial court properly granted Defendants' motions to dismiss.

The order of the trial court is hereby,

Affirmed.

Judge ELMORE concurs.

Judge TIMMONS-GOODSON dissents.

TIMMONS-GOODSON, Judge, dissenting.

Because I conclude that plaintiff sufficiently alleged a cause of action for wrongful termination, I respectfully dissent.

In the case *sub judice*, both parties agree that plaintiff was discharged from his employment. Plaintiff asserts that defendants violated public policy when they terminated plaintiff for his involvement in a domestic violence incident. Plaintiff makes the following pertinent allegations in his complaint:

7. Plaintiff was employed at will by Asheville City Coach Lines, Inc. for approximately 27 1/2 years, from approximately 1974 until his termination on August 17, 2001.

8. Prior to his termination, the Plaintiff was a victim of domestic violence, in that, on or about July 12, 2001, he was shot and seriously injured by his wife, Sandra Imes, after she accused Plaintiff of an extramarital relationship.

9. The gunshot wound sustained by the Plaintiff required him to seek the help of a neighbor to contact the police and to be taken by ambulance to the hospital followed by a several-day hospitalization period and surgery.

10. Within days of receiving his gunshot injury, the Plaintiff contacted the Defendant Asheville City Coach Lines, Inc. and/or the City of Asheville Transit Services Department to inform his general manager of the circumstances, the Plaintiff's need for surgery, and the Plaintiff's need to miss work.

11. On or about August 17, 2001, the Plaintiff's general manager, Larnel Blair, informed the Plaintiff that the Plaintiff was terminated from his employment.

. . . .

13. On August 17, 2001, Larnel Blair informed the Plaintiff that he was being terminated due to the Plaintiff being a victim of domestic violence.

14. Domestic violence is a serious social problem in North Carolina, recognized as such by the legislative, executive, and judicial branches of the state government.

15. The Plaintiff was a victim of domestic violence and as such was a member of a class of persons sought to be protected by the laws of the state of North Carolina.

16. The termination of Plaintiff's employment by the Defendants based on the Plaintiff's status as a victim of domestic violence violates the public policy of this state, in that, termination of any employment based on the employee's status as a victim of domestic violence tends to be injurious to the public and against the public good.

I agree with the majority that North Carolina has not yet held that an employer violates public policy when the employer discharges an employee solely because of the employee's status as a victim of domestic violence. However, I note that this Court has previously characterized "public policy" as a "vague expression," left to "the appropriate province of the courts to interpret." *McLaughlin v. Barclays American Corp.*, 95 N.C. App. 301, 305, 307, 382 S.E.2d 836, 839, 840, *cert. denied*, 325 N.C. 546, 385 S.E.2d 498 (1989). Thus, "[t]here is no 'bright-line' test for determining when the termination of an at-will employee violates public policy." *Teleflex Info. Sys., Inc. v. Arnold*, 132 N.C. App. 689, 691, 513 S.E.2d 85, 87 (1999). Our Supreme Court has previously explained why no definitive test exists:

Although it may be tempting to refine the definition of "public policy" in order to formulate a more precise and exact definition, we decline to do so. Any attempt to make the definition more precise would inevitably lead to at least as many questions as answers. True to common law tradition, we allow this still evolving area of the law to mature slowly, deciding each case on the facts before us.

*Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 353, n.1, 416 S.E.2d 166, 169, n.1 (1992). Therefore, as public policy evolves, so must this Court's ability to find a wrongful discharge in violation of public policy.

I find it persuasive that a number of our fellow states have found that assisting victims of domestic violence is a matter of public policy. *See Attorney Grievance Commission of Maryland v. Painter*, 356 Md. 293, 307, 739 A.2d 24, 32 (1999) (respondent attorney disbarred for committing domestic violence against his wife and children "contrary to the policy of this State, which abhors such acts."); *In re Principato*, 139 N.J. 456, 461, 655 A.2d 920, 922 (1995) (attorney

who committed domestic violence on client reprimanded by court, which found that "[i]n enacting the Prevention of Domestic Violence Act of 1991, the Legislature recognized that 'domestic violence is a serious crime against society' that affects people 'from all social and economic backgrounds and ethnic groups.' The policy of New Jersey is 'that violent behavior will not be excused or tolerated.' " (citations omitted)).

I also find persuasive the actions of our own state legislature in defining our laws regarding domestic violence and its victims. In 1979, the North Carolina Legislature enacted the North Carolina Domestic Violence Act, a series of statutes designed to protect victims of domestic violence from perpetrators of domestic violence. N.C. Gen. Stat. ch. 50B (2003). In N.C. Gen. Stat. § 50B-3(a), the Legislature specifically authorized courts to issue protective orders to an aggrieved party in order to "bring about a cessation of acts of domestic violence." The Legislature further authorized courts to order an offending party to "refrain from . . . harassing [an aggrieved party] . . . by . . . visiting the home *or workplace,* or other means[.]" N.C. Gen. Stat. § 50B-3(a)(9) (emphasis added). Nevertheless, if an individual is forced to leave work or is discharged from work "as a result of domestic violence committed upon the [individual]," N.C. Gen. Stat. § 96-14(1f) (2003) ensures that the individual is not denied employment security benefits.

I find the authorizations detailed in N.C. Gen. Stat. §§ 50B-3(a) and 96-14(1f) relevant to the case *sub judice.* While discussing the impetus behind the Domestic Violence Act in *State v. Thompson,* our Supreme Court noted that the Act was a formal recognition by then-Governor James B. Hunt, Jr., that "domestic violence is a 'serious and invisible problem' in North Carolina." 349 N.C. 483, 486, 508 S.E.2d 277, 279 (1998) (quoting North Carolina Legislation 1979, at 61 (Inst. of Gov't, Univ. of N.C. at Chapel Hill, Joan G. Brannon & Ann L. Sawyer eds. 1979)). While I agree with the Court's conclusion that the Domestic Violence Act formally recognized the problems associated with domestic violence, I conclude that the Act also formally recognized that the perils of domestic violence are often experienced in the workplace. In response to this recognition, the Legislature took the affirmative steps detailed in §§ 50B-3(a) and 96-14(1f). Noting that any exception to the at-will employment doctrine "should be adopted only with substantial justification grounded in compelling considerations of public policy," *Kurtzman v. Applied Analytical Industries, Inc.,* 347 N.C. 329, 334, 493 S.E.2d 420, 423 (1997), for the reasons

detailed above, I conclude that the Domestic Violence Act and the pertinent Employment Security Law provisions detailed herein represent an expression of North Carolina's strong public policy aimed not only at supporting victims of domestic violence, but also at preventing the effects of domestic violence from entering the workplace.

In *Considine v. Compass Grp. USA, Inc.*, this Court held that an at-will employee may only bring a wrongful discharge claim based on a violation of established public policy. 145 N.C. App. 314, 317, 551 S.E.2d 179, 183 (2001). In his complaint, plaintiff specifically alleges that his discharge for being the victim of domestic violence was in violation of North Carolina's public policy to protect victims of domestic violence, and that the violation was "injurious to the public and against the public good." I conclude that plaintiff's complaint sufficiently alleges that plaintiff's discharge violated public policy. Therefore, I would hold that no "insurmountable bar to recovery" appears on the face of the complaint. *Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1981). Furthermore, defendants make no argument, and I perceive no reason to hold, that plaintiff's allegations are insufficient to give defendants "notice of the nature and basis of [plaintiff's] claim[,] so as to enable [defendants] to answer and prepare for trial." *Id.* Thus, I conclude that plaintiff has sufficiently alleged a cause of action for wrongful discharge in violation of public policy. Therefore, I would hold that the trial court erred in dismissing plaintiff's complaint for failure to state a claim upon which relief may be granted.