DIETZ, Judge.
 

 *301
 
 This case concerns two common law causes of action-alienation of affection and criminal conversation-that permit litigants to sue the lovers of their unfaithful spouses. These laws were born out of misogyny and in modern times are often used as tools for enterprising divorce lawyers seeking leverage over the other side.
 

 Defendant Derek Williams contends that these aging common law torts are facially unconstitutional because they violate individuals' First and Fourteenth Amendment rights to engage in intimate sexual activity, speech, and expression with other consenting adults.
 

 As explained below, we reject this facial constitutional challenge. Claims for alienation of affection and criminal conversation are designed to prevent and remedy personal injury, and to protect the promise of monogamy that accompanies most marriage commitments. This sets these common law claims apart from the discriminatory sodomy law at issue in
 
 Lawrence v. Texas
 
 ,
 
 539 U.S. 558
 
 ,
 
 123 S.Ct. 2472
 
 ,
 
 156 L.Ed.2d 508
 
 (2003), which was not supported by any legitimate state interest and instead stemmed from moral disapproval and bigotry. Similarly, these laws (in most applications) seek to prevent personal and societal harms without regard to the content of the intimate expression that occurs in the extra-marital relationship. Thus, under
 
 United States v. O'Brien
 
 ,
 
 391 U.S. 367
 
 ,
 
 88 S.Ct. 1673
 
 ,
 
 20 L.Ed.2d 672
 
 (1968), these torts are constitutional despite the possibility that their use burdens forms of protected speech and expression.
 

 Our holding is neither an endorsement nor a critique of these "heart balm" torts. Whether this Court believes these torts are good or bad policy is irrelevant; we cannot hold a law facially unconstitutional because it is bad policy. We instead ask whether there are any applications of these laws that survive scrutiny under the appropriate constitutional standards. As explained below, although there are situations in which these torts likely are unconstitutional as applied, there are also many applications that survive constitutional scrutiny. Thus, the common law torts of alienation of affection and criminal conversation are not facially unconstitutional. We reverse the trial court's order and remand for further proceedings.
 

 Facts and Procedural History
 

 Marc and Amber Malecek were a married couple. Ms. Malecek is a nurse. Defendant Derek Williams is a medical doctor at the hospital where Ms. Malecek works. In early 2015, Dr. Williams and Ms. Malecek began a sexual relationship.
 

 *302
 
 Mr. Malecek discovered the affair and sued Dr. Williams for alienation of affection and criminal conversation. Dr. Williams moved to dismiss Mr. Malecek's claims under Rule 12(b)(6) of the Rules of Civil Procedure on the ground that North Carolina's common law causes of action for alienation of affection and criminal conversation are facially unconstitutional.
 

 The trial court held a hearing on Dr. Williams's motion, accepted his constitutional arguments, and entered a written order granting his motion to dismiss. Mr. Malecek timely appealed.
 

 Analysis
 

 This Court reviews the grant of a Rule 12(b)(6) motion to dismiss
 
 de novo
 
 .
 
 State v. Berger
 
 ,
 
 368 N.C. 633
 
 , 639,
 
 781 S.E.2d 248
 
 , 252 (2016). A Rule 12(b)(6) motion "is properly granted where a valid legal defense stands as an insurmountable bar to a plaintiff's recovery."
 
 Lupton v. Blue Cross & Blue Shield of N.C.
 
 ,
 
 139 N.C. App. 421
 
 , 424,
 
 533 S.E.2d 270
 
 , 272 (2000). Because the courts cannot permit a plaintiff to pursue a cause of action that is unconstitutional on its face, Dr. Williams's facial challenge to these common law torts is an appropriate subject for a Rule 12(b)(6) motion.
 

 *595
 
 We begin by examining the elements of these common law claims. "A claim for alienation of affections is comprised of wrongful acts which deprive a married person of the affections of his or her spouse-love, society, companionship and comfort of the other spouse."
 
 Darnell v. Rupplin
 
 ,
 
 91 N.C. App. 349
 
 , 350,
 
 371 S.E.2d 743
 
 , 744 (1988). To prevail on an alienation of affection claim, the plaintiff must prove (1) that the spouses were happily married and a genuine love and affection existed between them; (2) the love and affection was alienated and destroyed; and (3) the defendant caused the destruction of that marital love and affection.
 
 Id.
 
 at 350,
 
 371 S.E.2d at 745
 
 .
 

 Similarly, a claim for criminal conversation lies against a defendant who engages in sexual relations with a married person. "The elements of the tort are the actual marriage between the spouses and sexual intercourse between defendant and the plaintiff's spouse during the coverture."
 
 Johnson v. Pearce
 
 ,
 
 148 N.C. App. 199
 
 , 200-01,
 
 557 S.E.2d 189
 
 , 190 (2001).
 

 In the trial court, Dr. Williams argued that both of these causes of action were facially unconstitutional under the First and Fourteenth Amendments. The trial court agreed and granted Dr. Williams's Rule 12(b)(6) motion without identifying the particular constitutional doctrine on which it relied. Because we review the grant of a Rule 12(b)(6)
 

 *303
 
 motion to dismiss
 
 de novo
 
 , we must address all grounds on which Dr. Williams challenged these two common law claims.
 

 I. Substantive Due Process
 

 Dr. Williams first argues that alienation of affection and criminal conversation offend the Due Process Clause of the Fourteenth Amendment by restraining one's liberty to have intimate sexual relations with another consenting adult. In support of this argument, Dr. Williams relies on the U.S. Supreme Court's decision in
 
 Lawrence v. Texas
 
 .
 

 In
 
 Lawrence
 
 , the Supreme Court invalidated a Texas law criminalizing intimate sexual conduct between two people of the same sex.
 
 539 U.S. 558
 
 , 578,
 
 123 S.Ct. 2472
 
 ,
 
 156 L.Ed.2d 508
 
 (2003). The Texas statute was rooted in bigotry; it criminalized homosexual sex solely because some found it immoral or distasteful. As the Court observed, the Constitution does not permit a state to degrade the basic liberties of a group of its citizens on moral grounds. Gays, lesbians, and all other people who engage in homosexual sex "are entitled to respect for their private lives. The State cannot demean their existence or control their destiny by making their private sexual conduct a crime."
 

 Id.
 

 The Court thus invalidated the Texas law because it furthered "no legitimate state interest which can justify its intrusion into the personal and private life of the individual."
 

 Id.
 

 We agree with Dr. Williams that
 
 Lawrence
 
 established (or reaffirmed) that adult individuals have a constitutionally protected interest in engaging in intimate sexual activities free of governmental intrusion or regulation.
 

 Id.
 

 at 567
 
 ,
 
 123 S.Ct. 2472
 
 . Whatever the bounds of this protected right, it certainly extends to private sexual activities between two consenting adults. Moreover, a civil lawsuit between private parties constitutes "state action" for purposes of the Fourteenth Amendment when enforcement of that cause of action imposes liability for engaging in a constitutionally protected right.
 
 New York Times Co. v. Sullivan
 
 ,
 
 376 U.S. 254
 
 , 265,
 
 84 S.Ct. 710
 
 ,
 
 11 L.Ed.2d 686
 
 (1964). Thus, Dr. Williams correctly contends that a suit against him for alienation of affection and criminal conversation, based on his intimate sexual relationship with Ms. Malecek, implicates his Fourteenth Amendment rights.
 

 But the Supreme Court also added an important caveat in
 
 Lawrence
 
 . It observed that the Fourteenth Amendment generally prohibits States from regulating private, consensual sexual activity "absent injury to a person or abuse of an institution the law protects."
 
 Lawrence
 
 ,
 
 539 U.S. at 567
 
 ,
 
 123 S.Ct. 2472
 
 . It is well-settled that alienation of affection and criminal conversation seek to remedy an injury to a person.
 
 Misenheimer v. Burris
 
 ,
 
 360 N.C. 620
 
 , 624,
 
 637 S.E.2d 173
 
 , 176 (2006). Moreover, although the
 
 *304
 
 Supreme Court in
 
 Lawrence
 
 did not explain what it meant by an "institution the law protects," the institution of marriage seems an obvious
 
 *596
 
 choice. Marriage is, after all, perhaps the most important institution in human history. "The centrality of marriage to the human condition makes it unsurprising that the institution has existed for millennia and across civilizations."
 
 Obergefell v. Hodges
 
 , --- U.S. ----, ----,
 
 135 S.Ct. 2584
 
 , 2594,
 
 192 L.Ed.2d 609
 
 (2015). "Its dynamic allows two people to find a life that could not be found alone, for a marriage becomes greater than just the two persons. Rising from the most basic human needs, marriage is essential to our most profound hopes and aspirations."
 

 Id.
 

 Importantly, marriage is a commitment. Among the most central vows in a marriage is the promise of fidelity.
 

 Id.
 

 at 2608
 
 . In most marriages, this means a promise of monogamy; an agreement to share romantic intimacy and sexual relations only with one's spouse. Of course, not every marriage carries this commitment, but for those that do, society expects married couples to honor it. If they do not, injury results-personal injury to the still-faithful spouse, but also societal injury, because a broken marriage can mean the loss of all the benefits that a healthy marriage brings to society.
 
 See
 

 id.
 

 at 2595-97
 
 . Simply put, the State has a legitimate interest (indeed, a substantial interest) in protecting the institution of marriage, ensuring that married couples honor their vows, and deterring conduct that would cause injury to one of the spouses.
 

 We thus turn to the critical question presented here: is the State's need to protect these interests sufficient to justify private tort actions that restrict one's right to engage in intimate sexual conduct with other consenting adults?
 

 We hold that it is. The Supreme Court in
 
 Lawrence
 
 recognized a liberty interest in intimate sexual activity, but did not hold that it was a fundamental right.
 
 Lawrence
 
 ,
 
 539 U.S. at 578-79
 
 ,
 
 123 S.Ct. 2472
 
 ;
 

 id.
 

 at 605
 
 ,
 
 123 S.Ct. 2472
 
 (Scalia, J., dissenting). Instead, the Court applied what appears to be a robust form of rational basis review.
 
 Lawrence
 
 ,
 
 539 U.S. 558
 
 ,
 
 123 S.Ct. 2472
 
 . Under that standard, instead of merely asking if a law is rationally related to some legitimate governmental interest, courts weigh the government's asserted interest against the right to individual liberty or equal treatment that the challengers contend is violated.
 
 See
 

 United States v. Windsor
 
 , --- U.S. ----, ----,
 
 133 S.Ct. 2675
 
 , 2694-96,
 
 186 L.Ed.2d 808
 
 (2013) ;
 
 Romer v. Evans
 
 ,
 
 517 U.S. 620
 
 , 631-33,
 
 116 S.Ct. 1620
 
 ,
 
 134 L.Ed.2d 855
 
 (1996) ;
 
 Kadrmas v. Dickinson Public Schools
 
 ,
 
 487 U.S. 450
 
 , 461-64,
 
 108 S.Ct. 2481
 
 ,
 
 101 L.Ed.2d 399
 
 (1988) ;
 
 City of Cleburne v. Cleburne Living Ctr
 
 .,
 
 473 U.S. 432
 
 , 448,
 
 105 S.Ct. 3249
 
 ,
 
 87 L.Ed.2d 313
 
 (1985) ;
 
 Plyler v. Doe
 
 ,
 
 457 U.S. 202
 
 , 224-30,
 
 102 S.Ct. 2382
 
 ,
 
 72 L.Ed.2d 786
 
 (1982). Laws that demean individuals because of lingering prejudices or moral disapproval typically are invalidated under this standard, but laws that further important state
 
 *305
 
 interests without being rooted in bigotry or moral disapproval typically are upheld.
 

 Alienation of affection and criminal conversation fall into the latter category. These causes of action do not demean the existence of any group of people. They apply evenly to everyone. Moreover, the State's interest in preserving these torts is strong. As explained above, these torts deter conduct that causes personal injury; they protect promises made during the marriage; and they help preserve the institution of marriage, which provides innumerable benefits to our society.
 
 [1]
 

 To be sure, these common law torts are not the least liberty-restrictive means of vindicating the State's interests. For example, the State could invest in education to deter its citizens from cheating on their spouses. And, of course, these laws only impose liability on the third party. It arguably would be a greater deterrent to marital infidelity to impose liability on both the third party
 
 and
 
 the
 
 *597
 
 cheating spouse.
 
 [2]
 

 If a higher level of scrutiny applied in this case (Dr. Williams wrongly contends that strict scrutiny should apply here) these less liberty-restrictive alternatives would doom the torts. But under the robust rational basis standard applied in
 
 Lawrence
 
 and similar cases, Dr. Williams cannot prevail unless he shows that these laws stem from lingering prejudice or moral disapproval that overshadows the State's other reasons for enacting them. Dr. Williams has not made that showing. Thus, under
 
 Lawrence
 
 , our State's common law causes of action for alienation of affection and criminal conversation do not violate the Fourteenth Amendment.
 

 II. Freedom of Speech, Expression, and Association
 

 Dr. Williams next argues that alienation of affection and criminal conversation violate his rights to free speech, expression, and association guaranteed by the First and Fourteenth Amendments.
 

 *306
 
 We begin with Dr. Williams's challenge based on the First Amendment protection of speech and expression. Dr. Williams conceded at oral argument that the trial court found these causes of action facially unconstitutional. "In a facial challenge, the presumption is that the law is constitutional, and a court may not strike it down if it may be upheld on any reasonable ground."
 
 Affordable Care, Inc. v. N.C. State Bd. of Dental Exam'rs
 
 ,
 
 153 N.C. App. 527
 
 , 539,
 
 571 S.E.2d 52
 
 , 61 (2002). Thus, Dr. Williams cannot prevail on his facial challenge unless there is no reasonable set of circumstances in which these torts would be constitutional.
 

 We agree with Dr. Williams that, even where the challenged causes of action are based solely on the existence of an extra-marital sexual relationship, they can implicate protected speech and expression. In the past, cases involving the regulation of sexual activity typically have been viewed as regulations of conduct, not speech or expression. For example, in a First Amendment case involving prostitution at an adult bookstore, the Supreme Court noted that "the sexual activity carried on in this case manifests absolutely no element of protected expression."
 
 Arcara v. Cloud Books, Inc
 
 .,
 
 478 U.S. 697
 
 , 705,
 
 106 S.Ct. 3172
 
 ,
 
 92 L.Ed.2d 568
 
 (1986).
 

 But later cases suggest that sexual activity can carry an expressive message. For example, in
 
 City of Erie v. Pap's A.M
 
 ., the Court held that nude, erotic dancing involved expression that fell "within the outer ambit of the First Amendment's protection."
 
 529 U.S. 277
 
 , 289,
 
 120 S.Ct. 1382
 
 ,
 
 146 L.Ed.2d 265
 
 (2000). If using one's naked body to arouse another's sexual desire is a form of protected expression, it is difficult to understand why that expressive conduct would cease once the couple embraced, as opposed to staying at arm's length. Moreover, in
 
 Lawrence
 
 , the Supreme Court expressly acknowledged that one's sexuality "finds overt expression in intimate conduct with another person."
 
 539 U.S. at 567
 
 ,
 
 123 S.Ct. 2472
 
 . Thus, we agree with Dr. Williams that facing liability for engaging in intimate sexual relations with a married person can implicate the First and Fourteenth Amendment rights to free speech and expression.
 

 But, as with the substantive due process claim discussed above, the mere fact that these common law claims can burden the right to free speech and expression does not mean they must be struck down. In most applications of these torts, the State is not concerned with the
 
 content
 
 of the intimate speech or expression that occurs in an extra-marital relationship. Instead, the State seeks to deter and remedy the harmful effects
 
 that result
 
 from acts that cause people to break their marriage vows, inflict personal injury on others, and damage the institution of marriage. Put another way, these torts may restrict certain forms of intimate speech or expression, but they do so for reasons unrelated
 
 *598
 
 to the content of that speech or expression.
 
 *307
 
 Courts review laws that only incidentally burden protected expression under the test established in
 
 United States v. O'Brien
 
 ,
 
 391 U.S. 367
 
 ,
 
 88 S.Ct. 1673
 
 ,
 
 20 L.Ed.2d 672
 
 (1968). In
 
 O'Brien
 
 , the Supreme Court held that a ban on burning draft cards did not violate the First Amendment because, although the law burdened the rights of citizens seeking to burn their draft cards in political protest, the government's interest in preventing people from destroying their draft cards was justified by reasons unrelated to the content of that political speech.
 

 Id.
 

 at 376-77
 
 ,
 
 88 S.Ct. 1673
 
 . As the Court later explained, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."
 
 Ward v. Rock Against Racism
 
 ,
 
 491 U.S. 781
 
 , 791,
 
 109 S.Ct. 2746
 
 ,
 
 105 L.Ed.2d 661
 
 (1989). This type of content-neutral law will be upheld if it "is narrowly drawn to further a substantial governmental interest, and if the interest is unrelated to the suppression of free speech."
 
 Clark v. Cmty. for Creative Non-Violence
 
 ,
 
 468 U.S. 288
 
 , 294,
 
 104 S.Ct. 3065
 
 ,
 
 82 L.Ed.2d 221
 
 (1984).
 

 These common law torts are facially valid under this standard. They further the State's desire to protect a married couple's vow of fidelity and to prevent the personal injury and societal harms that result when that vow is broken. As explained above, preventing these personal injuries and societal harms is a substantial governmental interest. Moreover, the State's interest is unrelated to the content of the protected First Amendment right. If the defendant's actions deprived a married person of the love and affection of his or her spouse, the State will impose liability regardless of what the defendant actually said or did.
 
 Cf.
 

 City of Cincinnati v. Discovery Network, Inc
 
 .,
 
 507 U.S. 410
 
 , 429,
 
 113 S.Ct. 1505
 
 ,
 
 123 L.Ed.2d 99
 
 (1993). Indeed, when spouses agree to an "open" marriage that permits extra-marital intimacy or sex, that is a defense to these claims, as is physical separation of the spouses when either spouse intends for the separation to remain permanent.
 
 See
 

 N.C. Gen. Stat. § 52-13
 
 (2015) ;
 
 Barker v. Dowdy
 
 ,
 
 223 N.C. 151
 
 , 152,
 
 25 S.E.2d 404
 
 , 405 (1943) ;
 
 Nunn v. Allen
 
 ,
 
 154 N.C. App. 523
 
 , 536,
 
 574 S.E.2d 35
 
 , 44 (2002). This undermines Dr. Williams's argument that these laws target extra-marital intimacy or sex because the State disapproves of expressing that intimacy while married to someone else.
 

 Simply put, these torts are intended to remedy harms that result when marriage vows are broken, not to punish intimate extra-marital speech or expression because of its content. And, because the availability of a tort action to the injured spouse provides both a remedy for that harm and a deterrent effect (one that benefits the State and society without punishing any speech or expression that does not cause these harms), the torts are narrow enough to survive constitutional scrutiny under the
 
 O'Brien
 
 test.
 

 *308
 
 Dr. Williams also argues that these torts are facially unconstitutional because they violate the First Amendment right to free association. The First Amendment "restricts the ability of the State to impose liability on an individual solely because of his association with another."
 
 NAACP v. Claiborne Hardware Co.
 
 ,
 
 458 U.S. 886
 
 , 918-19,
 
 102 S.Ct. 3409
 
 ,
 
 73 L.Ed.2d 1215
 
 (1982). But these torts do not prohibit all conceivable forms of association between a spouse and someone outside the marriage. There are countless ways for one to associate with a married person, form meaningful relationships, and even share feelings and intimacy without incurring liability for alienation of affection or criminal conversation. Moreover, when Dr. Williams articulates the specific associational rights that he contends are impacted, his argument collapses back to arguments about rights to intimate speech and expression. For the reasons discussed above, the incidental burden on those rights does not render these torts facially unconstitutional.
 

 We emphasize that our holding today does not mean that every application of these common law torts is constitutional. There may be situations where an as-applied challenge to these laws could succeed. Take, for example, one who counsels a close friend to abandon a marriage with an abusive spouse.
 

 *599
 
 But this case, as the parties concede, is not one of those cases. It was decided as a facial challenge on a motion to dismiss at the pleadings stage. In the future, courts will need to grapple with the reality that these common law torts burden constitutional rights and likely have unconstitutional applications. For now, we hold only that alienation of affection and criminal conversation are not facially invalid under the First and Fourteenth Amendments.
 
 [3]
 

 Conclusion
 

 For the reasons explained above, we reverse the trial court's order and remand this case for further proceedings.
 

 REVERSED AND REMANDED.
 

 Judges ELMORE and TYSON concur.
 

 [1]
 

 Our analysis ignores those in "open" marriages where both spouses agree that they may engage in intimacy or sexual activity outside the marriage. When the spouses agree to an open marriage, this is a complete defense to claims of alienation of affection and criminal conversation.
 
 See
 

 Barker v. Dowdy
 
 ,
 
 223 N.C. 151
 
 , 152,
 
 25 S.E.2d 404
 
 , 405 (1943) ;
 
 Nunn v. Allen
 
 ,
 
 154 N.C. App. 523
 
 , 536,
 
 574 S.E.2d 35
 
 , 44 (2002).
 

 [2]
 

 North Carolina has a criminal law that could be used to prosecute unfaithful spouses but the State has chosen not to use it, at least in modern times.
 
 See
 

 N.C. Gen. Stat. § 14-184
 
 . This may be because many other applications of this criminal statute are plainly unconstitutional and the State has concerns that this application would be as well.
 
 See
 

 Lawrence
 
 ,
 
 539 U.S. at 578
 
 ,
 
 123 S.Ct. 2472
 
 ;
 
 Hobbs v. Smith
 
 , No. 05 CVS 267,
 
 2006 WL 3103008
 
 , at *1 (N.C. Super. Aug. 25, 2006) (unpublished).
 

 [3]
 

 Dr. Williams also argues that these torts violate rights to speech, expression, and privacy guaranteed by the North Carolina Constitution. Our State Supreme Court has interpreted these rights as co-extensive with the analogous rights in the U.S. Constitution.
 
 State v. Petersilie
 
 ,
 
 334 N.C. 169
 
 , 184,
 
 432 S.E.2d 832
 
 , 841 (1993) ;
 
 In re Moore's Sterilization
 
 ,
 
 289 N.C. 95
 
 , 98,
 
 221 S.E.2d 307
 
 , 309 (1976). This Court has no authority to overrule our Supreme Court's interpretation of these state constitutional provisions.