IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-395

Filed: 7 April 2020

Mecklenburg County, No. 16 CVS 3613

MOLLY SCHWARZ, Plaintiff,

v.

ST. JUDE MEDICAL, INC., ST. JUDE MEDICAL, S.C., INC., DUKE UNIVERSITY, DUKE UNIVERSITY HEALTH SYSTEM, INC., ERIC DELISSIO and TED COLE, Defendants.

Appeal by plaintiff from orders entered 10 January 2019 by Judge Karen Eady-Williams and 17 January 2019 by Judge R. Kent Harrell in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 November 2019.

*Kennedy, Kennedy, Kennedy and Kennedy, LLP, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff-appellant.*

*Parker Poe Adams & Bernstein LLP, by Keith M. Weddington, and Seyfarth Shaw LLP, by Nancy E. Rafuse and J. Stanton Hill, for defendants-appellees St. Jude Medical, Inc., St. Jude Medical S.C., Inc., Eric Delissio, and Ted Cole.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Robert A. Sar and Andrew C. Avram, for defendants-appellees Duke University and Duke University Health System.*

DIETZ, Judge.

Plaintiff Molly Schwarz worked for St. Jude Medical, a medical device company. In her position, Schwarz visited doctor's offices and hospitals and interacted with physicians and patients.

Over several years, St. Jude received multiple complaints from doctors and patients about Schwarz's unprofessional or inappropriate behavior. Ultimately, St. Jude fired Schwarz.

Schwarz then sued St. Jude, one of her co-workers, her direct supervisor, and Duke University Health System, one of St. Jude's larger customers in the region. She asserted claims for retaliatory discharge, sex and age discrimination, libel, and tortious interference with her employment contract.

The trial court granted summary judgment for Defendants and against Schwarz on all claims. On appeal, Schwarz asserts a series of procedural arguments about the timing of one of the two summary judgment hearings and argues that her claims should have been sent for trial. We disagree.

As explained below, the trial court was well within its sound discretion to conduct the summary judgment hearing when it did, rather than continue it, and Schwarz's evidence was insufficient to create a genuine issue of material fact on any of her claims. Accordingly, the trial court properly entered judgment in Defendants' favor as a matter of law.

**Facts and Procedural History**

In 2012, Defendant St. Jude Medical, a medical device company, hired Plaintiff Molly Schwarz to work as a Clinical Specialist. As part of her duties, Schwarz had to conduct "patient checks" in doctor's offices and hospitals to assess and assist with the

adjustment of implanted medical devices. Schwarz also had to field calls and answer questions about the devices and provide information at conferences within a defined territory. During this period, Schwarz worked with Defendant Ted Cole, the Territory Manager for St. Jude in the Raleigh area. Both Schwarz and Cole were supervised by Defendant Eric Delissio, St. Jude's Regional Sales Director.

Beginning in 2014, St. Jude received several complaints from physicians and patients about Schwarz, including some complaints so serious that physicians prohibited St. Jude from sending Schwarz to work with them. For example, in June 2014, a physician banned Schwarz from working with him because Schwarz gave the doctor an expired medical device to implant. Schwarz received a written warning from Delissio for this incident. Later, in September 2014, St. Jude received a complaint from another hospital that Schwarz was "like a bull in a China shop" and agitated a patient when servicing the patient's medical device. Then, in January 2015, a physician in Schwarz's assigned territory prohibited Schwarz from coming to his office unless absolutely necessary because he claimed Schwarz had challenged his medical judgment in front of a patient.

In February 2015, St. Jude's human resources department suggested to Schwarz's supervisors that she be placed on a performance improvement plan based upon her "pattern of behavior that needed to be addressed with [Schwarz] from a customer standpoint." One week later, Schwarz's supervisors received a verbal

complaint from a patient who alleged that Schwarz was unprofessional, lacked compassion, and appeared to lack knowledge of how St. Jude's medical devices functioned. The patient refused future care from Schwarz.

Finally, in late February 2015, another patient complained that Schwarz exposed the patient to unnecessary radiation, was argumentative, refused to listen, and "kept referring to the [x-ray] films backwards." Cole received a copy of the email containing these claims and he forwarded the email to Delissio, who in turn forwarded it to high-level managers at St. Jude.

After considering other, less drastic disciplinary measures, St. Jude ultimately decided to terminate Schwarz's employment based on the pattern of behavior revealed by the repeated physician and patient complaints. In March 2015, St. Jude notified Schwarz that her employment was terminated. Schwarz then filed this lawsuit, asserting claims for wrongful termination, defamation, and tortious interference with contract.

Schwarz does not dispute the existence of the long series of physician and patient complaints against her. But she insists that these complaints were used as a pretext to fire her.

She contends that the real reason she was fired was because she informed her supervisors that a physician at Duke University Health System, with whom St. Jude worked, was engaged in an extra-marital affair with one of Schwarz's co-workers at

St. Jude. Schwarz asserted claims for wrongful discharge based on public policy, sex discrimination, and age discrimination against St. Jude; libel claims against Cole and Delissio, the co-workers who forwarded certain patient complaints to superiors within the company; and tortious interference claims against Cole and Delissio, as well as against Duke University and Duke University Health System, the employer of the physician who allegedly had an extra-marital affair with Schwarz's co-worker.

After full discovery, Defendants moved for summary judgment. The trial court entered summary judgment for Defendants and against Schwarz on all claims. Schwarz timely appealed.

**Analysis**

**I.    Notice of the St. Jude summary judgment hearing**

Schwarz first argues that the trial court improperly ruled on the St. Jude defendants' summary judgment motion because Schwarz did not receive adequate notice of the hearing on that motion.[1] We reject this argument.

Under Rule 56(c), the party seeking summary judgment must serve the motion on the adverse party "at least 10 days before the time fixed for the hearing." N.C. R. Civ. P. 56(c). "Although Rule 56 makes no direct reference to notice of hearing, this Court has held that such notice also must be given at least ten (10) days prior to the hearing." *Wilson v. Wilson*, 191 N.C. App. 789, 791, 666 S.E.2d 653, 654 (2008).

---

[1] We refer to the St. Jude Medical companies and the two St. Jude employees, Cole and Delissio, collectively as "St. Jude."

"Failure to comply with this mandatory 10 day notice requirement will ordinarily result in reversal of summary judgment obtained by the party violating the rule." *Zimmerman's Dep't Store, Inc. v. Shipper's Freight Lines, Inc.*, 67 N.C. App. 556, 557–58, 313 S.E.2d 252, 253 (1984).

Here, St. Jude complied with this 10-day notice rule. St. Jude served the motion by fax on 27 December 2018, ten days before the 7 January 2019 hearing on the motion. This service by fax is permitted by Rule 5 of the Rules of Civil Procedure. N.C. R. Civ. P. 5(b)(1)(a). Thus, St. Jude notified Schwarz of the summary judgment hearing at least ten days in advance.

But Schwarz argues that she was entitled to *thirteen* days advance notice, not ten. This is so, she reasons, because St. Jude also served its notice by mail. Under the "mail rule" for service contained in Rule 6(e), Schwarz argues, "three days shall be added to the prescribed period" of notice, thus meaning she was entitled to a 13-day notice period rather than a 10-day one. *See* N.C. R. Civ. P. 6(e); *see also Planters Nat'l Bank and Tr. Co. v. Rush*, 17 N.C. App. 564, 566, 195 S.E.2d 96, 97 (1973).

We reject this argument. The purpose of the 10-day mandatory notice requirement in Rule 56(c) is to ensure that the non-moving party is aware of the upcoming hearing at least ten days in advance. That occurred here because St. Jude faxed the notice ten days before the hearing in conformity with the procedural requirements of both Rule 5 and Rule 56(c).

## II.   Motion for continuance

Next, Schwarz contends that the trial court erred by denying her motion to continue the 7 January 2019 summary judgment hearing. Again, we reject this argument.

"Rule 56(f) allows the trial court to deny a motion for summary judgment or order a continuance to permit additional discovery, if the party opposing the motion cannot present facts essential to justify his opposition." *Fla. Nat'l Bank v. Satterfield*, 90 N.C. App. 105, 109, 367 S.E.2d 358, 361 (1988). "The chief consideration to be weighed in passing upon the application is whether the grant or denial of a continuance will be in furtherance of substantial justice." *Bowers v. Olf*, 122 N.C. App. 421, 426, 470 S.E.2d 346, 350 (1996). The decision of whether to grant a request for a continuance under Rule 56(f) is left to the sound discretion of the trial court. *Fla. Nat'l Bank*, 90 N.C. App. at 109, 367 S.E.2d at 361. This Court cannot override that determination unless the trial court abused its discretion through a ruling "so arbitrary that it could not have been the result of a reasoned decision." *Manning v. Anagnost*, 225 N.C. App. 576, 579, 739 S.E.2d 859, 861 (2013).

Here, Schwarz argues that the trial court should have granted a continuance because her attorneys "were on vacation during the Christmas holidays," giving them little time to prepare for the hearing. She also contends that St. Jude's motion relied on witnesses that St. Jude failed to disclose during the discovery period. Thus, she

contends, the interests of justice required the trial court to continue the hearing to provide Schwarz and her counsel with additional time to prepare.

The trial court's analysis of this question is a paradigmatic example of a discretionary decision to which this Court must defer. Schwarz argued the continuance was necessary in the interests of justice. St. Jude disagreed. Both sides offered reasonable arguments for their positions. The trial court considered the parties' arguments and elected, in its discretion, to proceed with the hearing. Although the trial court properly could have granted a continuance, the court's decision not to do so was a reasoned, non-arbitrary one and thus was well within the trial court's sound discretion. *Fla. Nat'l Bank*, 90 N.C. App. at 109, 367 S.E.2d at 361.

## III. Wrongful discharge – retaliation

Schwarz next argues that the trial court erred by granting summary judgment in favor of St. Jude on her wrongful discharge claim based on unlawful retaliation. Schwarz contends that her termination was retaliation for her report of adultery by a co-worker and that this retaliation violates North Carolina public policy. We reject this argument.

Schwarz was an at-will employee. "Although at-will employment may be terminated for no reason, or for an arbitrary or irrational reason," the employer cannot terminate an employee for a "reason or purpose that contravenes public policy." *Imes v. City of Asheville*, 163 N.C. App. 668, 670, 594 S.E.2d 397, 398 (2004).

Put another way, employers generally are free to "retaliate" against their at-will employees by firing them for conduct of which they disapprove. But they cannot fire an at-will employee for a reason that contravenes North Carolina public policy.

"Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Id.* at 670, 594 S.E.2d at 399. Public policy is violated "when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Id.*

Here, Schwarz contends that she engaged in conduct protected by North Carolina public policy because she "reported adultery" by one of her co-workers. Adultery, Schwarz contends, is an illegal act and a report of this illegal activity to the employer is a protected act under North Carolina public policy.

There are several flaws in this argument. First, it is far from clear that adultery is a criminal act in North Carolina. To be sure, there is an aging statute titled "Fornication and Adultery" which provides that "[i]f any man and woman, not being married to each other, shall lewdly and lasciviously associate, bed and cohabit together, they shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-184. But this Court has examined this statute and observed that "the State has chosen not to use it, at least in modern times." *Malecek v. Williams*, 255 N.C. App. 300, 305 n.2, 804 S.E.2d 592, 597 n.2 (2017). Indeed, in 2006, a trial court declared Section 14-184

facially unconstitutional. The court entered a permanent injunction providing that the State was "hereby permanently enjoined from enforcing N.C.G.S. § 14–184 in any manner." *Hobbs v. Smith*, No. 05 CVS 267, 2006 WL 3103008, at *1 (N.C. Super. Aug. 25, 2006) (unpublished). The State did not appeal that permanent injunction and it appears to be in effect today. Thus, Schwarz has not identified any currently applicable statutory basis for asserting that adultery is a criminal act.

In any event, we find no support in either the General Statutes or our case law for the principle that reporting to one's *employer* the private sexual activity of a co-worker is protected by any "express policy declarations contained in the North Carolina General Statutes." *Imes*, 163 N.C. App. at 670, 594 S.E.2d at 399. The alleged consensual affair between Schwarz's co-worker and a married physician is simply not conduct so "injurious to the public or against the public good" that reporting it to Schwarz's employer could be considered a part of the core public policy of our State. *Id.* The trial court therefore properly concluded that Schwarz's wrongful discharge claim based on public policy grounds failed as a matter of law.

## IV.  Wrongful discharge - sex and age discrimination

Schwarz next argues that St. Jude committed sex and age discrimination by firing her and hiring a male employee who was 39 years old. This wrongful discharge argument, like Schwarz's previous one, is fatally flawed.

North Carolina has adopted the legal standard for sex and age discrimination that was developed through federal employment discrimination doctrine. *Johnson v. Crossroads Ford, Inc.*, 230 N.C. App. 103, 111, 749 S.E.2d 102, 108 (2013). Under this standard, the claimant must first establish a prima facie case of disparate treatment by showing that: (1) she is a member of a protected class; (2) she was qualified for her job and her performance was satisfactory; (3) she suffered an adverse employment action; and (4) other similarly situated employees who are not members of the protected class did not suffer the same adverse employment action. *Head v. Adams Farm Living, Inc.*, 242 N.C. App. 546, 555, 775 S.E.2d 904, 910 (2015).

Once the claimant meets this standard, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *North Carolina Dep't of Correction v. Gibson*, 308 N.C. 131, 137, 301 S.E.2d 78, 82 (1983). Then, the burden shifts back to the employee to show that the proffered reason for the adverse employment action was merely a pretext for discrimination. *Id.*

Here, even assuming Schwarz's evidence satisfied her initial burden to show a prima facie case of sex and age discrimination, her claim fails because the record contains evidence of a legitimate, nondiscriminatory reason for Schwarz's termination—repeated, consistent complaints from physicians and patients about Schwarz's inappropriate or unprofessional conduct. Indeed, even a core part of

Schwarz's retaliatory discharge claim—that she revealed an extra-marital affair between a co-worker and a customer—demonstrates that St. Jude's reason for terminating Schwarz concerned her conduct toward the patients and physicians on whom St. Jude depends for its business.

In response, Schwarz did not offer any evidence that these reasons for her termination were merely a pretext and that St. Jude's real reason for her termination was her sex or age. *Hodge v. North Carolina Dep't of Transp.*, 246 N.C. App. 455, 474, 784 S.E.2d 594, 607 (2016); *Head*, 242 N.C. App. at 561, 775 S.E.2d at 914. Without that evidence, Schwarz cannot survive a motion for summary judgment. Accordingly, the trial court properly entered judgment on this claim as a matter of law.

**V.    Libel claim**

Schwarz next argues that the trial court improperly entered summary judgment on her libel claim. Schwarz contends that Defendants Ted Cole and Eric Delissio committed libel *per se* by forwarding an email up the chain of command at St. Jude. The email alleged that Schwarz mistreated a patient by misreading an x-ray and exposing a patient to unnecessary radiation. We reject Schwarz's argument.

"[L]ibel *per se* is a publication by writing, printing, signs or pictures which, when considered alone without innuendo, colloquium, or explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or

profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Renwick v. News and Observer Pub. Co.*, 310 N.C. 312, 317, 312 S.E.2d 405, 408–09 (1984).

Although this claim can arise in a workplace setting, there are special rules for libel and defamation claims that occur within a healthcare institution. Healthcare professionals generally have a qualified privilege to report to management any employee work performance issues that implicate patient care. *Troxler v. Carter Mandala Ctr., Inc.*, 89 N.C. App. 268, 272, 365 S.E.2d 665, 668 (1988). This privilege exists because the "health care industry plays a vital and important role in our society" and encouraging employees to share concerns about healthcare services ensures the "quality and trustworthiness of the care which the medical community provides." *Id.*

Here, even taking all the evidence in the light most favorable to Schwarz, her libel allegations fall squarely within the qualified privilege for healthcare professionals. Cole and Delissio received an email indicating that Schwarz provided improper care to a patient. Cole forwarded the email to Delissio, his supervisor, and Delissio forwarded it to higher-ranking employees at St. Jude. Neither defendant sent the email to anyone outside this chain of command within St. Jude. This sort of internal reporting of an allegation of improper patient care is protected from libel claims by the qualified privilege applicable in the healthcare field. Accordingly, the

trial court properly entered summary judgment on Schwarz's libel claims.

## VI.    Tortious interference

Finally, Schwarz argues that Defendants Cole, Delissio, and Duke University Health System tortiously interfered with her employment contract by inducing St. Jude to terminate her employment. Again, this argument is meritless.

To establish a claim for tortious interference with contract, there must be "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *Brodkin v. Novant Health, Inc.*, __ N.C. App. __, __, 824 S.E.2d 868, 874 (2019).

We begin with Schwarz's claim against Cole and Delissio, her two co-employees at St. Jude. When a tortious interference claim based on an employment contract is brought against the plaintiff's co-employees, "the plaintiff must show that the alleged interference was unrelated to a 'legitimate business interest' of the employee." *Id.*

Here, unrebutted evidence in the record indicates that the alleged interference—that is, these two employees' involvement in St. Jude's decision to terminate Schwarz—was related to their legitimate business interests. Cole was one

of Schwarz's co-workers and interacted with the same clients and patients as Schwarz. Delissio is the mutual supervisor for both Cole and Schwarz.

Cole reported to Delissio that a number of clients and patient had complaints and other concerns about Schwarz's work. Delissio then investigated those concerns and ultimately provided disciplinary recommendations to St. Jude that included possible termination.

Reporting and investigating repeated complaints by patients and healthcare professionals about a co-employee's work performance is a legitimate business interest. *Id.* Accordingly, the trial court properly concluded that undisputed evidence in the record defeated Schwarz's tortious interference claim against her two co-employees at St. Jude as a matter of law.

Schwarz next contends that Duke University Health System tortiously induced St. Jude to fire Schwarz because she reported a sexual relationship between a co-worker and a Duke employee. But this claim fails because, even taking all evidence in the light most favorable to Schwarz, she has not forecast any evidence that Duke sought her termination from St. Jude. *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 745, 641 S.E.2d 695, 697 (2007).

Duke was, in effect, a customer of St. Jude. One of Duke's physicians refused to work with Schwarz. At most, Duke requested that St. Jude not send Schwarz to work with them, and to use other St. Jude employees instead. There is no evidence

that Duke "intentionally induced" St. Jude to terminate its employment contract with Schwarz. *Brodkin*, __ N.C. App. at __, 824 S.E.2d at 874. Indeed, there is no evidence that Duke had any interest at all in whether Schwarz remained employed at St. Jude. Even taking all inferences in Schwarz's favor, Duke, at most, requested not to work with Schwarz anymore. There is no evidence that this would have forced St. Jude to end its employment contract with Schwarz, nor any evidence that Duke believed this to be true. This, in turn, means Schwarz failed to forecast any evidence that "the defendant intentionally induce[d] the third person not to perform the contract." *Id.* Accordingly, the trial court properly determined that Schwarz's tortious interference claim failed as a matter of law.

## Conclusion

For the reasons stated above, we affirm the trial court's orders granting summary judgment in favor of Defendants.

AFFIRMED.

Judges DILLON and ARROWOOD concur.